732 F.2d 1128
 116 L.R.R.M. (BNA) 2137
 VETERANS ADMINISTRATION MEDICAL CENTER, NORTHPORT, NEW YORK,
Petitioner, Cross-Respondent,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent, Cross-Petitioner,
and
National Federation of Federal Employees, Local 387,
Intervenor-Respondent.
 Nos. 672, 682, Dockets 83-4026, 83-4170.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 3, 1984.
Decided April 19, 1984.
 
 John S. Koppel, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., William Kanter, Atty., Civ. Div., Dept. of Justice, Washington, D.C., of counsel), for petitioner, cross-respondent.
 Robert J. Englehart, Atty., F.L.R.A., Washington, D.C. (Ruth E. Peters, Sol., Steven H. Svartz, Deputy Sol., F.L.R.A., Washington, D.C., of counsel), for respondent, cross-petitioner.
 Suzanne L. Kalfus, Nat. Federation of Federal Employees, Washington, D.C. (Catherine Waelder, Gen. Counsel, Nat. Federation of Federal Employees, Washington, D.C., of counsel), for intervenor-respondent.
 Before LUMBARD, OAKES and CARDAMONE, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 The Veterans Administration Medical Center, Northport, New York, challenges a decision of the Federal Labor Relations Authority requiring it to negotiate with the National Federation of Federal Employees, Local 387, over proposals for grievance procedures involving disciplinary and adverse actions against VA Department of Medicine and Surgery ("DM & S") professional employees. The Authority held that the general requirement of collectively bargained grievance procedures contained in the Civil Service Reform Act applies to disciplinary matters involving DM & S professionals, and that the VA's refusal to bargain constituted an unfair labor practice. VA Medical Center, Northport, 10 FLRA No. 114 (Dec. 23, 1982). We have jurisdiction to hear this appeal under 5 U.S.C. Sec. 7123(a). We read the provision in the DM & S statute, 38 U.S.C. Sec. 4110, authorizing peer review boards to conduct disciplinary proceedings against these employees, as exclusive, thereby relieving the VA of any duty to negotiate over this issue. Accordingly, we grant the VA's petition to review the FLRA's order, and deny the Authority's cross-petition to enforce the order.
 
 I.
 
 2
 The union represents a bargaining unit of employees, including DM & S nurses, at the VA Medical Center in Northport, New York. In January, 1980, the union notified the VA that it wanted to amend the parties' existing collective bargaining agreement. In August of that year, after the rules for negotiations had been established, the union submitted, among other proposals, one for a "broad scope"[1] negotiated grievance procedure to deal with disciplinary and adverse actions concerning employees.
 
 
 3
 On September 30, 1980, before negotiations began, the Authority issued its decision in American Federation of Government Employees, Local 3669, and Veterans Administration Medical Center, Minneapolis, 4 FLRA No. 53 ("VA Minneapolis"), holding that proposals to expand the scope of negotiated grievance procedures to include disciplinary and adverse actions taken against DM & S professional employees are negotiable.
 
 
 4
 In December, 1980, the VA informed the union that it would not negotiate the scope of the grievance procedure because, to the extent it covered DM & S nurses, the proposal violated 38 U.S.C. Secs. 4110 and 4119.
 
 
 5
 The union then filed charges with the FLRA, pursuant to 5 U.S.C. Sec. 7118, asserting that the VA's refusal to bargain on the scope of the grievance procedures, despite the Authority's determination in VA Minneapolis that the subject is negotiable, constituted an unfair labor practice. The VA contended that it was not bound by the VA Minneapolis decision because both a request to the Authority for reconsideration and an appeal to the Eighth Circuit were then pending.
 
 
 6
 On December 23, 1982, the Authority held that the VA had committed an unfair labor practice, in violation of 5 U.S.C. Sec. 7116(a)(1) and (a)(5),[2] by refusing to consider itself bound by the Authority's VA Minneapolis decision.[3] The VA then filed a petition for review with this court.
 
 
 7
 On February 8, 1983, while the VA's petition was pending, the Eighth Circuit reversed the Authority's decision in the VA Minneapolis case. Veterans Administration Medical Center v. FLRA, 705 F.2d 953 (8th Cir.1983). The VA petitioned the Authority to reconsider its decision in this case, and moved this court to hold in abeyance consideration of its petition pending the Authority's disposition of its reconsideration request. On April 12, 1983, we suspended proceedings in the case.
 
 
 8
 After the Authority on June 2, 1983, denied the VA's reconsideration request as being time barred, the VA reinstated its petition for review in this court.
 
 II.
 
 9
 This case requires us to consider two statutory schemes concerning federal employees. The Civil Service Reform Act of 1978, 5 U.S.C. Sec. 7101 et seq. (1976 & Supp. V 1981), declares that every collective bargaining agreement shall provide procedures for settling grievances, 5 U.S.C. Sec. 7121(a)(1), but it allows parties to negotiate over matters to be excluded from such procedures, 5 U.S.C. Sec. 7121(a)(2). All contractual grievances procedures must include a provision for binding arbitration. 5 U.S.C. Sec. 7121(b)(3)(C). 5 U.S.C. Sec. 7121(e)(1) provides that where grievances arise under other personnel systems applicable to an employee, that employee may, in his discretion, raise the grievance under "the appellate procedures, if any, applicable to those matters, or under the negotiated grievance procedure, but not both."
 
 
 10
 In 1946 Congress had established the Department of Medicine and Surgery (DM & S) as an arm of the Veteran's Administration, and designed a specific personnel system for DM & S employees.[4] Pub.L. No. 79-293, 59 Stat. 675, 38 U.S.C. Sec. 4101-4115 (1976). Of particular importance in this case is 38 U.S.C. Sec. 4110, which provides that charges of "inaptitude, inefficiency or misconduct" of any DM & S professional[5] shall be handled by peer review boards. The peer review boards hold hearings, determine facts, and recommend disciplinary action to the Veteran's Administrator, whose decision is final.
 
 
 11
 The relationship between these two statutory schemes is outlined in 38 U.S.C. Sec. 4119, enacted by Congress in 1980. Veterans Administration Health Care Amendments of 1980, Pub.L. No. 96-330, 94 Stat. 1030, Title I, Sec. 116(a)(1). That section declares that no provision of title 5 which is "inconsistent" with any provision of title 38 "shall be considered to supersede, override, or otherwise modify such provision of this subchapter except to the extent that ... [it] specifically provides, by specific reference to a provision of this subchapter, for such provision to be superseded, overridden, or otherwise modified."
 
 
 12
 The VA concedes that, pursuant to the Civil Service Reform Act, it must bargain collectively with its DM & S employees. It maintains, however, that 38 U.S.C. Sec. 4110 is the exclusive procedure for handling grievances involving the discipline of DM & S professionals. The FLRA and the union, which we have allowed to intervene in this appeal, contend that the section 4110 procedure and the collective bargaining provisions in title 5 are not "inconsistent," but are alternative procedures to be invoked at the discretion of an aggrieved employee. Under this latter view, Sec. 4119, which resolves conflicts between statutory provisions, does not apply, since no conflict exists, and the VA must therefore negotiate on a grievance procedure, pursuant to the general requirements of title 5.
 
 
 13
 In Veterans Administration Medical Center v. FLRA, 705 F.2d 953 (8th Cir.1983), the Eighth Circuit faced the same issue we face here. The court reasoned that there is a conflict between the two statutory provisions, not because Sec. 4110 declares that "the decision of the Administrator shall be final," but because Congress established the peer review system for DM & S professionals intending it to be exclusive. Although the court found some merit in the argument that the subsequent passage, in 1978, of the Civil Service Reform Act impliedly ended the exclusive status of Sec. 4110, such a holding was foreclosed by Congress's directive in 38 U.S.C. Sec. 4119, enacted in 1980, that absent explicit references to the contrary, conflicts between title 5 and title 38 should be resolved in favor of the latter.
 
 
 14
 We need not engage in any extensive discussion, as we agree with the Eighth Circuit's analysis of this problem. At most, Sec. 7121 impliedly overrode Sec. 4110.[6] This is insufficient, however, as 38 U.S.C. Sec. 4119 provides that a title 5 section can override a title 38 section only by specific reference in the text of the statute to the title 38 section.
 
 
 15
 The Authority argues that the Eighth Circuit misinterpreted the legislative history of Sec. 4119. It points to a statement that Congress did not "intend that any of the changes made by the legislation to the VA's health care personnel authorities detract in any way from employees' rights under existing collective bargaining agreements between the VA and its employees," Explanatory Statement of Agreement on H.R.7102/S.2534, 126 Cong.Rec. H6850 (daily ed. July 31, 1980), reprinted in 1980 U.S.Code Cong. & Ad.News 2463, 2557, 2563, as evidence that Congress intended the bargained-for grievances procedures to serve as an alternative to peer review for DM & S professionals. We disagree with the Authority's reading of the legislative history of Sec. 4119.[7] At the time of its enactment, the DM & S professionals at issue here had no "rights existing under existing collective bargaining agreements" pertaining to discipline because the VA has consistently refused to bargain over this issue. As to other matters, the VA has not refused to bargain with DM & S professionals, and does not argue here that it has no duty to do so. Second, the Eighth Circuit noted that the same legislative history "contained language similar to that of section 4119 itself ... expressing Congress's intent that the Veteran's Administration law (title 38) control over any inconsistent civil service provisions, unless those provisions required otherwise by 'specific reference to the title 38 provision'." 705 F.2d at 958 n. 7.
 
 
 16
 The Authority also argues that the facts of this case materially differ from those in the VA Minneapolis case. In VA Minneapolis, the parties agreed that if the grievance procedures proposed during collective bargaining could be utilized at all by DM & S professionals, it would only be "subsequent to review and recommendations by the 'peer' disciplinary boards." 705 F.2d at 957 n. 4. In rejecting such sequential use of a negotiated grievance procedure, the Eighth Circuit reasoned that since the review boards were created to reduce inefficiencies in the prior civil service review system, and were made the exclusive means of disciplinary review, "[t]he existence of more 'red tape,' even in the form of a negotiated grievance procedure triggered by the recommendation of the 'peer' disciplinary boards, conflicts with the attempt to simplify the procedures by creating the boards." Id.
 
 
 17
 The Authority further contends that the instant case compels a different result because here it held that the competing procedures would be alternative rather than sequential. We disagree, as we think the identical statutory conflict remains in either case. Based on Sec. 4119's clear, unambiguous language, we, like the Eighth Circuit, "must resolve any conflict between Sec. 4110 and the duty to bargain under Sec. 7121 of the Civil Service Reform Act in favor of the continued applicability of the Veterans Administration law." 705 F.2d at 958.
 
 
 18
 The VA's petition to review the FLRA's order is granted, and the cross-petition to enforce the order is denied.
 
 
 
 [1]
 A "broad scope" negotiated grievance procedure is one which covers all matters that, under provisions of law, could be covered by the procedure. 5 U.S.C. Sec. 7121(a); AFGE Locals 225, 1504, and 3723 v. FLRA, 712 F.2d 640, 642 (D.C.Cir.1983). The proposal submitted by the union in the instant case provided, in pertinent part, as follows:
 GRIEVANCE PROCEDURE
 SCOPE: This negotiated grievance procedure shall be expanded to the fullest extent under Title 7 of the Civil Service Reform Act of 1978 and shall apply to matters of concern or dissatisfaction regarding the interpretation, application or violation of law, regulations, or this agreement; conditions of employment, and including proficiency ratings, relationships with agency supervisors and officials, including prohibited personnel practice charges, and disciplinary and adverse actions. It shall apply to all matters indicated above, whether or not set forth in this agreement. The sole exceptions to the scope of the Grievance Procedure are as follows:
 A violation relating to political activities; Retirement, life insurance, or health insurance; A suspension or removal for national security; Any examination, certification, or appointment; or Classification of position which does not result in the reduction in grade or pay of the employee.
 Nothing in this section shall prevent employees from exercising the option of appealing adverse actions to the Merit Systems Protection Board, or processing any prohibited personnel practice defined in law through the statutory appeals process.
 
 
 [2]
 5 U.S.C. Sec. 7116(a) declares that "it shall be an unfair labor practice for an agency--
 (1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter.
 * * *
 (5) to refuse to consult or negotiate in good faith with a labor organization as required by this chapter."
 
 
 [3]
 The Authority rested its decision on 5 U.S.C. Sec. 7123(c), which states that judicial review will not operate as a stay of an Authority order unless the reviewing court so orders. The Eighth Circuit had not ordered a stay. The Authority also rejected the VA's argument that its refusal to negotiate was justified because a request for reconsideration was pending before the Authority, citing its own regulation, 5 C.F.R. Sec. 2429.17, which provides that the filing of a motion for reconsideration does not stay an Authority order
 
 
 [4]
 For example, qualifications for DM & S professionals are determined by the VA "without regard to civil service requirements" 38 U.S.C. Secs. 4105(a), 4106(a); DM & S professionals have a different probationary period than other civil service employees, 38 U.S.C. Sec. 4106(b); their hours, conditions of employment and leaves of absence are determined by the Administrator "notwithstanding any law, Executive order or regulation," 38 U.S.C. Sec. 4108(a); and they are paid according to special grades and scales, 38 U.S.C. Sec. 4107
 
 
 [5]
 The peer review system provided for in 38 U.S.C. Sec. 4110 applies to any person employed in a position listed in 38 U.S.C. Sec. 4104(1). Those employees include "physicians, dentists, podiatrists, optometrists, nurses, physician assistants, and expanded-function dental auxiliaries."
 
 
 [6]
 The Authority makes two arguments in support of that construction of Congressional intent. First, it points to the fact that the bargaining provisions of the Civil Service Reform Act were also passed, in part, to cure inefficiencies in the process of disciplining and removing unfit Federal employees, see 124 Cong.Rec. 17083 (daily ed. Oct. 4, 1978) (remarks of Sen. Percy), as evidence that Congress intended to have the two systems operate side by side. We disagree. Although Congress may well have passed the Civil Service Reform Act to cure inefficiencies in disciplinary procedures for Federal employees generally, it seems strained at best to say that one of the targets for reform was the specific process for handling disciplinary matters involving DM & S professionals, which itself had been designed with efficiency in mind. Furthermore, the Authority cites no evidence to support its theory that Congress intended the peer review system to be exclusive only until the Civil Service provisions were reformed generally
 Second, the Authority points to the language of the Senate Governmental Affairs Committee Report, stating that Sec. 7121(e) created an option for employees subject to the civil service laws, but covered under other personnel systems, "such as those provided in title 38," to raise grievances under the negotiated procedure or the procedure provided for by the other system. S.Rep. No. 95-969, 95th Cong., 2d Sess. 110, reprinted in 1978 U.S.Code Cong. & Ad.News 2723, 2832. Even if the intent of this comment in the Senate Report were specifically to refute the exclusivity of 38 U.S.C. Sec. 4110 for DM & S professionals, 38 U.S.C. Sec. 4119 provides that such a modification must be by specific reference in the text of the statute to the title 38 provision. Furthermore, the VA contends that was not the intent of the comment. It argues that the option was created only for employees who fall under traditional civil service-type discipline. Title 38 employees who would fit this description include Canteen Service Employees appointed under 38 U.S.C. Sec. 4202(5), and DM & S temporary part-time employees appointed under 38 U.S.C. Sec. 4114(a).
 
 
 [7]
 The Authority argues that its interpretation of the negotiability issue under the Civil Service Reform Act must be affirmed if it is rational, and that since 5 U.S.C. Sec. 7121 speaks of "other personnel systems," its interpretation of the DM & S system is entitled to similar deference. We disagree. As the Supreme Court recently explained in Bureau of Alcohol Tobacco and Firearms v. FLRA, --- U.S. ----, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983), when an agency makes policy choices within the authority given to it by Congress, those choices should be affirmed as long as the agency follows procedural requirements and its decision is not arbitrary, capricious, or an abuse of discretion. "When an agency's decision is premised on its understanding of a specific Congressional intent, however, it engages in the quintessential judicial function of deciding what a statute means. In that case, the agency's interpretation ... may be influential, but it cannot bind a court." Id. at ---- n. 8, 104 S.Ct. at 444 n. 8
 Moreover, the Authority is interpreting 38 U.S.C. Sec. 4119, a section not of the Civil Service Reform Act, but part of a subchapter administered by the Veterans Administration. As we stated in Division of Mil. & Naval Affairs v. FLRA, 683 F.2d 45, 48 (2d Cir.1982), cert. denied, --- U.S. ----, 104 S.Ct. 523, 78 L.Ed.2d 708 (1983), "[n]o great deference is due an agency interpretation of another agency's statute."