**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent, Veterans Administration, Intervenor.**

No. 87–1378.

United States Court of Appeals, District of Columbia Circuit.

Argued May 6, 1988.

Decided July 1, 1988.

tion. We hold the Authority's decision not arbitrary and capricious and therefore deny the petition.

Charles A. Hobbie, with whom Mark D. Roth, Washington, D.C., was on the brief, for petitioner.

Robert J. Englehart, Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., William E. Persina, Deputy Sol., and Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Jeffrey Clair, Dept. of Justice, with whom James M. Spears, Acting Asst. Atty. Gen., and William Kanter, Dept. of Justice, were on the brief, for intervenor, Veterans Admin. E. Roy Hawkens, Dept. of Justice, Washington, D.C., also entered an appearance for intervenor, Veterans Admin.

Before WALD, Chief Judge, SILBERMAN, Circuit Judge, and PARKER,* Judge, United States District Court for the District of Columbia.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

This is a petition for review of a Federal Labor Relations Authority ("FLRA" or "Authority") decision holding that the Veterans Administration ("VA") did not commit an unfair labor practice by refusing to comply with an arbitrator's award. The Authority concluded that the agency was entitled to challenge the arbitrator's jurisdiction in an unfair labor practice proceeding and that the arbitrator lacked jurisdic-

## I.

Grace R. Kain, a staff nurse at the VA hospital in Fargo, North Dakota, was accused of professional misconduct in the dispensing of medication, and in February of 1984 she was reassigned pending an internal inquiry conducted by a Board of Investigation ("BOI"). As part of the VA's quality assurance program, see 38 U.S.C. § 4151 (1982 & Supp. III 1985), a medical facility director may authorize a BOI to investigate, *inter alia*, medication errors that aggravate a patient's existing condition. 18 C.F.R. § 17.508(a)–(c) (1987). Based on the BOI's findings and recommendations, the hospital's director determined that she should be removed. Kain requested a hearing, to which she was entitled as a health-care professional pursuant to 38 U.S.C. § 4110 (1982 & Supp. III 1985), which covers charges of "inaptitude, inefficiency, or misconduct" and provides that the disciplinary decision of the VA Administrator shall be "final." 38 U.S.C. § 4110(a), (d).[1] Under that statutory provision, a disciplinary board composed of five senior employees was formed and conducted a hearing in October 1984. The board subsequently recommended that Kain be discharged, and accordingly the Chief Medical Director fired her effective June 30, 1985.

Meanwhile, in May 1984 petitioner, Local 3884 of the American Federation of Government Employees ("AFGE"), filed a grievance under its collective bargaining agreement with the Veterans Administration asserting that the BOI committed procedural errors when investigating Kain's

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Section 4110 provides in relevant part:
   (d) A disciplinary board, when in its judgment charges are sustained, shall recommend to the Administrator suitable disciplinary action, within limitations prescribed by the Administrator, which shall include reprimand, suspension without pay, reduction in grade, and discharge

from the Department of Medicine and Surgery of such person. The Administrator shall either approve the recommendation of the board, approve such recommendation with modification or exception, approve such recommendation and suspend further action at the time, or disapprove such recommendation. He shall cause to be executed such action as he approves. The decision of the Administrator shall be final.

case. Under the terms of the Federal Service Labor–Management Relations Act of 1978 ("FSLRA"), 5 U.S.C. §§ 7101–7135 (1982 & Supp. IV 1986), every collective bargaining agreement must contain a "fair and simple" grievance procedure and allow both the union and the employer to invoke "binding arbitration" in case of a failure to reach a satisfactory settlement. *Devine v. White,* 697 F.2d 421, 428 (D.C.Cir.1983) (citing 5 U.S.C. §§ 7121(a)–(b)), *rev'd in part, Cornelius v. Nutt,* 472 U.S. 648, 656 n. 7, 105 S.Ct. 2882, 2887 n. 7, 86 L.Ed.2d 515 (1985).

Specifically, the Union charged that the VA unduly delayed both the seating of the BOI and its final determination, generally treated Kain's case differently from previous, similar ones, and violated the agency's regulations and policies—all contrary to an alleged contractual right to due process. In addition, the union later submitted the transcript of the disciplinary board's October 1984 decision into evidence before the arbitrator as further evidence that the VA failed to comply with its own disciplinary procedures. Although the Veterans Administration challenged the arbitrator's jurisdiction to review proceedings conducted under section 4110, the arbitrator nevertheless determined that the BOI's procedures violated the collective bargaining agreement and ordered Kain's reinstatement with back pay. Contrary to the VA's argument, the arbitrator found that the disciplinary board under section 4110 did not cure any alleged deficiencies in procedure in the BOI's determination and further that these procedural errors would be addressed by the arbitrator—not the disciplinary board. The arbitrator directed the agency either to drop the charges against Kain or constitute a new BOI to conduct a fresh investigation. *See VA Medical Center, Fargo, N.D. v. AFGE,* FCMS No. 84K/22269 (Aug. 20, 1985) (Flagler, Arb.). The arbitrator concluded that while he lacked jurisdiction to adjudicate the merits of the underlying dispute—whether or not Kain engaged in misconduct—he nevertheless had jurisdiction under the collective bargaining agreement to correct procedural errors in the VA's investigation of the case. *Id.* at 10–12.

The VA filed exceptions to the arbitrator's award with the FLRA, challenging the arbitrator's jurisdiction. The VA claimed that section 4110 of title 38 provides the exclusive remedy for a health-care employee disputing discipline or discharge, and therefore that none of the procedures of the FSLRA—including provisions for arbitration of collective bargaining disputes—could apply to Kain's discharge. Although the FLRA has authority to review directly arbitral awards that are assertedly "contrary to any law, rule, or regulation," 5 U.S.C. § 7122(a)(1), the FLRA lacks jurisdiction to review certain discipline cases, including removals under § 7512. *See* 5 U.S.C. §§ 7121(f), 7122(a), 7512; *see also Devine v. White,* 697 F.2d at 429 n. 26. In section 7512 removal cases, the aggrieved employee, in her discretion, may elect to pursue her claim either under the appellate procedures of 5 U.S.C. § 7701 or the negotiated procedure under a collective bargaining agreement—but not both. *Devine v. White,* 697 F.2d at 444 (Appendix A). Under the former, an employee first appeals to the Merit Systems Protection Board ("MSPB") and then to the Federal Circuit. But, in negotiated procedure cases, review of the arbitral decision is taken to the Federal Circuit "as if the matter had been decided by the [MSPB]." 5 U.S.C. § 7121(f). The arbitrator must apply the same statutorily prescribed standards in deciding the case as would be applied if the matter had been appealed to the MSPB first. 5 U.S.C. § 7121(e)(2). By that device, Congress assured uniformity of direct review of adverse personnel actions, at least of § 7512 removal cases. *Cornelius v. Nutt,* 472 U.S. at 661 n. 16, 105 S.Ct. at 2890 n. 16. Accordingly, the FLRA determined that it had no jurisdiction, on direct review, to consider the VA's exceptions. *See VA Medical Center, Fargo, N.D. v. AFGE,* 20 F.L.R.A. 854 (1985).

The VA, however, as a government employer, is not entitled to direct review of an adverse MSPB decision or arbitrator's award before the Federal Circuit in section 7512 removal cases. 5 U.S.C. §§ 7121(f), 7701–7703; *see also Devine v. White,* 697

F.2d at 437. That review can be sought on behalf of the agency only by the Director of the Office of Personnel Management ("OPM"). *See Devine v. White,* 697 F.2d at 437; 5 U.S.C. § 7703(d). Apparently, the VA did not ask OPM to seek review; instead, it refused to comply with the award.

■ At that point, the union filed an unfair labor practice charge and the general counsel of the FLRA issued a complaint asserting the VA's refusal to abide by the award violated 5 U.S.C. § 7122(b), which obligates agencies to comply with a final, binding arbitrator's award. The ALJ agreed, but the Authority rejected the ALJ's recommended decision. In the case's posture as an *unfair labor practice proceeding,* as opposed to an *exception to an arbitral award,* the Authority determined that it should entertain the VA's argument that the arbitrator lacked jurisdiction, and it held that he did. Although normally the FLRA will not permit a party to challenge an arbitrator's award collaterally in an unfair labor practice proceeding, *see, e.g., United States Dep't of Justice v. AFGE,* 22 F.L.R.A. 928, 932 (1986); *United States Army v. AFGE,* 22 F.L.R.A. 200, 206–07 (1986), it concluded that where the challenge is to the arbitrator's very jurisdiction—as opposed to his interpretation of a collective bargaining agreement—its usual approach is inappropriate. Then the Authority—abandoning its earlier position that section 4110 was not the exclusive means for review of a grievance and acquiescing in two circuit court opinions [2]—concluded that 38 U.S.C. § 4110 provides the exclusive remedy for Kain to challenge her discharge. It relied, *inter alia,* on section 4119, part of the 1980 amendment to title 38 (the Veterans Administration statute), which states:

> Notwithstanding any other provision of law, no provision of title 5 or any other law pertaining to the civil service system which is inconsistent with any

provision of this subchapter shall be considered to supersede, override, or otherwise modify such provision of this subchapter except to the extent that such provision of title 5 or of such other law specifically provides, by specific reference to a provision of this subchapter, for such provision to be superseded, overridden, or otherwise modified.

Veterans Administration Health–Care Amendments of 1980, Pub.L. No. 96–330, Title I, § 116(a)(1), 94 Stat. 1030, 1039, *codified at* 38 U.S.C. § 4119 ("VA Amendments").

## II.

Petitioner claims the FLRA is not authorized to create an exception to its normal rule—barring challenges to the validity of an arbitrator's award in an unfair labor practice proceeding—to allow, in that context, a protest to an arbitrator's assertions of jurisdiction. We find that argument unpersuasive. Of course the FLRA, when interpreting its own statute, is entitled to deference, *Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *National Fed'n of Fed. Employees Local 1745 v. FLRA,* 828 F.2d 834, 837–38 (D.C.Cir.1987), and nothing in the Act nor its legislative history is inconsistent with the Authority's view. Indeed, judicial review of private sector labor arbitration is, if anything, more restricted than is the FLRA's review of arbitration arising out of federal employee collective bargaining. *See Devine v. White,* 697 F.2d at 435–40. Yet even in the private sector an arbitrator's "jurisdiction" (arbitrability) can be challenged in an enforcement proceeding. *See AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648–49, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); [3] *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

---

2. *VA Medical Center, Northport, N.Y. v. FLRA,* 732 F.2d 1128, 1131 (2d Cir.1984); *VA Medical Center, Minneapolis, Minn. v. FLRA,* 705 F.2d 953, 956 (8th Cir.1983).

3. Here the jurisdictional question—unlike the *AT & T* arbitrability issue—does not at all implicate the merits of the dispute.

■ To be sure, the FLRA properly channels appeals of an arbitrator's award into the procedures for direct review that the statute provides. But here, the Veterans Administration could not gain direct review. The VA, as we noted, vainly filed exceptions with the FLRA, and it—as opposed to OPM in OPM's sole discretion—had no right to appeal to the Federal Circuit. Even had OPM lodged an appeal, moreover, judicial review is still discretionary in the Federal Circuit, which has power much like the Supreme Court's to grant or deny a writ of certiorari. At least, then, where a party wishing to challenge an arbitrator's jurisdiction has no *right* of direct review, we think the Authority's decision to permit such a challenge as a defense to an unfair labor practice complaint is a quite reasonable procedural interpretation of its statute and not an arbitrary deviation from its normal practice.

### III.

■ Petitioner, taking the position the FLRA initially espoused, argues that the language in section 4110, "The decision of the Administrator shall be final," does not necessarily suggest an intention to preclude procedural relief under other federal employee relations statutes. But, as our sister circuits have noted, the legislative history does support the Authority's present view. *VA Medical Center, Minneapolis, Minn. v. FLRA,* 705 F.2d 953, 956 (8th Cir.1983) (holding section 4110 exclusive, so there is no obligation for the VA to bargain over proposals pertaining to alternative means of resolving grievances over alleged professional misconduct); *VA Medical Center, Northport, N.Y. v. FLRA,* 732 F.2d 1128, 1131 (2d Cir.1984) (same). It demonstrates that Congress in 1946 enacted the peer review process for professionals (including nurses) to enhance health-care for veterans, in part by making it easier to remove unsatisfactory professional personnel than under the civil service laws.

> There were doctors who did not come up to what we thought they should and what the chief medical officers thought they should; but in view of all the red tape and the difficulty of bringing charges and proving them under the civil-service regulations, the chief medical officer got to the point where he said, "I cannot do anything about it anyway," arranged for a transfer of the man, and by so doing the inefficient doctor simply changed the scene of his activities, but the evil was not remedied.

91 CONG.REC. 11,663 (1945) (statement of Rep. Scrivner) (*quoted in VA Minneapolis,* 705 F.2d at 956–57); *see also* S.REP. NO. 858, 79th Cong., 1st Sess. 3 (1945) (authorizing the termination of unsatisfactory VA professionals without the restrictions of the constraints of civil service laws).

Subsequently, Congress, in the Civil Service Reform Act of 1978, extensively modified the civil service laws and added the FSLRA to title 5, arguably generating some ambiguity as to the continuing exclusivity of section 4110. *See VA Northport,* 732 F.2d at 1131. In 1980, however, Congress passed section 4119 which states explicitly that where title 5 is "inconsistent with" title 38, the latter governs. The purpose of the amendment was to "enhanc[e] the Veterans' Administration's ability to compete effectively with other Federal agencies *and private sector entities* providing health-care services by improving the agency's recruitment, retention, and personnel management effort[.]" S.REP. No. 747, 96th Cong., 2d Sess. 27 (1980), U.S.Code Cong. & Admin.News 1980, pp. 2463, 2465 (emphasis added). Granted, the FLRA initially thought section 4110 was not the exclusive means to redress a grievance for VA employees covered by that section, even after the 1980 passage of section 4119, *see AFGE v. VA Medical Center, Minneapolis, Minnesota,* 4 F.L.R.A. 391 (1980), but the Authority, as we indicated, has since adopted the view of the Second and Eighth Circuits that in light of section 4119, title 38's section 4110 is the only method for redressing grievances. *See VA v. AFGE,* 15 F.L.R.A. 948 (1984).

Petitioner argues that section 4119 should not be read to disadvantage employees covered by the peer review system of section 4110, and it surely should not be

read to deprive those employees of a pre-existing right to arbitration.[4] The general purpose of the 1980 VA Amendments, of which section 4119 was a part, was to extend new benefits to affected employees (*e.g.*, increased wages and overtime pay) so, according to petitioner, if section 4119 were to be given a meaning unfavorable to the interests of those employees, it would be inconsistent with that general purpose. Instead, AFGE suggests that section 4119 was designed only to protect those added benefits from any dilution that might be caused by title 5's provisions. It may well be that Congress in passing section 4119 was primarily concerned with enhancing benefits of health-care professionals, but the statute's language is not so limited. Title 38 is simply an entirely different personnel system from that embodied in title 5; it has both provisions more beneficial to employees and those that are less advantageous. We see no indication that Congress wished only those provisions more beneficial to employees in title 38 to preempt title 5; Congress spoke categorically and unequivocally so, it seems to us, it intended the affected employees to take the bitter with the sweet.

Finally, AFGE argues that even if section 4110 makes the VA's decision exclusive as to the merits, there is no bar to the arbitrator's reviewing the VA's decision for procedural errors. AFGE claims that the Supreme Court has sanctioned an analogous exception in *Lindahl v. OPM,* 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985), and the FLRA should follow suit when it interprets the FSLRA. In *Lindahl,* the Court encountered a provision of the Civil Service Reform Act that purported to make final OPM's decision on an employee's entitlement to disability benefits. *See* 5 U.S.C. § 8347(c) (OPMs "decisions ... concerning these matters are final and conclusive and are not subject to review"). The Court held that section

8347(c) foreclosed review by the MSPB (and the Federal Circuit) only of factual medical determinations, yet held that serious defects in the administrative process itself were subject to review. The Court reasoned that nothing in the plain language of section 8347(c) foreclosed the longstanding practice under *Scroggins v. United States,* 397 F.2d 295, *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968), permitting review for errors in the administrative process of decisions on disability retirement. 470 U.S. at 780–91, 105 S.Ct. at 1627–33. Here, by contrast, Congress, when it passed section 4119, did not have before it a similar longstanding judicial or agency interpretation of section 4110 to the effect that an Administrator's final determination was not final as to serious procedural errors. We therefore think *Lindahl,* which was premised on that backdrop, is inapposite. Indeed, it could be argued that it is an even greater infringement of the VA statute for the arbitrator, whose authority stems from an entirely different body of law—the collective bargaining agreement—to review procedure developed pursuant to the statute than would be his consideration of the merits, *i.e.,* whether Kain's behavior merited discharge. *Cf. Darr v. NLRB,* 801 F.2d 1404, 1407 (D.C. Cir.1986). Even if *judicial* review of the BOI's process were available, *Lindahl* certainly does not suggest that authority is bestowed on an arbitrator—who draws no authority at all from the Veterans statute. Since an arbitrator's determination is subject to limited review even under the FSLRA, to permit the arbitrator to exercise jurisdiction over the Veterans Administration's procedure or substantive determination would truly make the arbitrator's decision more nearly "final" than that of the Administrator.

We conclude that we should follow the view of the Second and Eighth Circuits and

---

**4.** This "pre-existing right" contention is something of a bootstrap argument because between 1978 and 1980 no tribunal had recognized this "right." Contrary to AFGE's suggestion, neither the Second nor the Eighth Circuit stated that the 1978 passage of the FSLRA created a right to arbitrate disputes for VA professionals. Our

sister circuits said only that even *if* a right were created, and thus a conflict between the FSLRA and the VA statute existed, the 1980 passage of section 4119 resolved any doubt in favor of section 4110's exclusivity. *VA Northport,* 732 F.2d 1128; *VA Minneapolis,* 705 F.2d 953.

the Authority, and therefore the petition for review is

*Denied.*