976 F.2d 1409
 141 L.R.R.M. (BNA) 2502, 298 U.S.App.D.C. 105
 DEPARTMENT OF HEALTH AND HUMAN SERVICES, SOCIAL SECURITY
ADMINISTRATION, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
American Federation of Government Employees, AFL-CIO, Intervenor.
 No. 91-1444.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 21, 1992.
Decided Oct. 13, 1992.
 
 Marilyn S.G. Urwitz, Attorney, Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and William Kanter, Attorney, Dept. of Justice, Washington, D.C., were on the brief, for petitioner.
 Richard Zorn, Attorney, Federal Labor Relations Authority, with whom William E. Persina, Sol., William R. Tobey, Deputy Sol., and Arthur A. Horowitz, Associate Sol., Washington, D.C., were on the brief for respondent.
 Anne M. Wagner, with whom Mark D. Roth, Washington, D.C., was on the brief, for intervenor American Federation of Government Employees, AFL-CIO. Judith D. Galat, Washington, D.C., entered an appearance for intervenor.
 Before WALD, SILBERMAN and SENTELLE, Circuit Judges.
 Opinion for the Court filed by Circuit Judge WALD.
 WALD, Circuit Judge:
 
 
 1
 This is a petition for review by the Social Security Administration ("SSA") of an order of the Federal Labor Relations Authority ("FLRA" or the "Authority"), and a cross-application by the FLRA for enforcement of its order. The American Federation of Government Employees, AFL-CIO ("AFGE") is an intervenor in support of the decision of the FLRA. The issue is whether, in an unfair labor practice proceeding brought as a result of a government agency's refusal to adhere to an arbitration award, the Authority may enforce compliance with the arbitration award regardless of whether the arbitrator had contractual jurisdiction in the original proceeding. The FLRA's determination that, on the facts of this case, such an argument may not be asserted as a defense to an unfair labor practice charge represents a reasonable reading of its governing statute. SSA's petition for review is therefore denied and the FLRA's application for enforcement of the order is granted.
 
 I. BACKGROUND
 
 2
 This dispute had its genesis in 1983 when the SSA removed Kirk Bigelow, a claims representative, from his position for refusing to attend job training. Bigelow balked at attending training because he had not received the pay he believed he was entitled to for union activities, so-called "official time." Bigelow filed a grievance, and an arbitrator required that SSA reinstate Bigelow as long as he agreed to spend some of his work time on agency, rather than union, obligations. Shortly after returning to work, Bigelow sought leave without pay to attend law school full time. SSA denied this request, asserting that Bigelow was not upholding his end of the bargain--i.e., he proposed to spend no time on agency duties. Bigelow then resigned, and AFGE filed a grievance alleging that SSA's denial of leave without pay was an improper constructive discharge of Bigelow.
 
 
 3
 The Bigelow dispute was not the only conflict between SSA and AFGE over official time during this period. In 1982, the union and the agency selected Arbitrator Justin Smith to handle over 1,000 pending grievances that involved the official time provision of their collective bargaining agreement. Under the parties' agreement, Arbitrator Smith was first to interpret the contractual term governing official time and then to apply that interpretation to the specific grievances. Arbitrator Smith completed the first step of this process with the issuance of a "Final Award" on April 5, 1985. The parties then entered into an agreement extending his jurisdiction to all specific official time claims filed by September 10, 1985. The union submitted the Bigelow dispute to Arbitrator Smith, but not until September 12, 1986, a year after the deadline under the agreement. Nevertheless, Arbitrator Smith accepted jurisdiction over the claim, ruled in Bigelow's favor, and ordered his reinstatement.
 
 
 4
 In a standard case, the SSA could have appealed this adverse arbitration decision directly to the FLRA under 5 U.S.C. § 7122(a),[1] enacted as part of the Federal Service Labor-Management Relations Statute ("FSLMRS"). However, because the Bigelow dispute concerned a removal, a matter covered by 5 U.S.C. § 7512(1),[2] SSA's opportunity for review was governed by 5 U.S.C. § 7121(f),[3] which in turn incorporates the procedures of 5 U.S.C. § 7703(d).[4] Under § 7703(d), it is the Director of the Office of Personnel Management ("OPM")--and not the SSA--that must petition the Federal Circuit for discretionary review if the Director believes that the arbitrator's decision would have a "substantial impact on a civil service law, rule, regulation, or policy directive." In this case, OPM did seek review of the Bigelow award, but on substantive, not jurisdictional, grounds. The Federal Circuit refused to hear the case, however, finding that it did not have the "requisite substantial impact" to merit review. Horner v. Bigelow, Misc. Docket No. 178, slip opinion ("slip op.") at 3 (Fed.Cir. Aug. 31, 1987).
 
 
 5
 While review of the Bigelow decision was being sought, the SSA also filed exceptions with the FLRA under 5 U.S.C. § 7122(a) contesting a separate order of Arbitrator Smith. In that order, Arbitrator Smith ruled that, for the life of the collective bargaining agreement, only he could resolve all official time disputes as well as all disciplinary proceedings arising out of official time conflicts. In November 1987, the Authority set aside that order, American Federation of Government Employees v. Social Security Administration, 29 F.L.R.A. 1568, 1579 (1987) ("SSA I "), and decided that the breadth of the jurisdiction that AFGE and SSA had contracted to give Arbitrator Smith was itself subject to arbitration, if the parties could not resolve the issue themselves. See id. at 1580.
 
 
 6
 The parties subsequently agreed to have Arbitrator Ira Jaffe determine the scope of Arbitrator Smith's jurisdiction under the contract. On April 7, 1988, Arbitrator Jaffe determined that Arbitrator Smith had overstepped the contractual authority granted to him. More specifically, Arbitrator Jaffe concluded that Arbitrator Smith's jurisdiction extended only to the application of the rulings in his April 5, 1985 Final Award to individual claims submitted by the September 10, 1985 contractual deadline. Arbitrator Jaffe also found that Arbitrator Smith had no jurisdiction over actions involving an agency's discipline of its employees. Finally, Arbitrator Jaffe stated that he was not authorized to decide "what weight, if any," should be given to awards that Arbitrator Smith had already, albeit mistakenly, granted outside of his jurisdiction.
 
 
 7
 The FLRA subsequently upheld Arbitrator Jaffe's decision. See Social Security Administration v. National Council of Social Security Administration Field Operation Locals, American Federation of Government Employees, 33 F.L.R.A. 743, 755 (1988) ("SSA II "). As to the unauthorized awards that Arbitrator Smith had already made, the FLRA held that those that "bec[a]me final and binding under section 7122 of the Statute" would not be affected by Arbitrator Jaffe's determination. Id. at 753.
 
 
 8
 SSA, relying on SSA II 's conclusions as to Arbitrator Smith's lack of jurisdiction, refused to comply with the award to Bigelow. AFGE then filed an unfair labor practice charge, alleging that SSA violated5 U.S.C. § 7116(a)(1) and § 7116(a)(8)[5] by not complying with § 7122(b)'s injunction that "[a]n agency shall take the actions required by an arbitrator's final award." FLRA's General Counsel agreed and filed an unfair labor practice complaint against SSA. The Administrative Law Judge ("ALJ") dismissed the complaint, finding that there was no unfair labor practice because Arbitrator Smith had no jurisdiction to hear Bigelow's claims that were submitted a year after the contractual deadline laid down in SSA II. See Department of Health & Human Services, Social Security Administration v. American Federation of Government Employees, 41 F.L.R.A. 777, 790 (1989).
 
 
 9
 The Authority, however, reversed the ALJ's decision and ordered the SSA to comply with Arbitrator Smith's award to Bigelow. See Department of Health & Human Services, Social Security Administration v. American Federation of Government Employees, 41 F.L.R.A. 755, 774 (1991) ("SSA III "). The Authority found that the decision on Bigelow's grievance became final and enforceable after completion of the § 7703(d) Federal Circuit appeals process. See id. at 767. Thus, allegations that the arbitrator had exceeded the authority that the parties contracted to give him could no longer be raised. According to the FLRA, this conclusion accorded with the relevant congressional policies of arbitral finality and limited appellate review of removal decisions conducted exclusively by the Federal Circuit. See id. at 768, 771. Although the FLRA acknowledged that it had previously determined in VA Central Office v. American Federation of Government Employees, 27 F.L.R.A. 835 (1987), aff'd sub nom. American Federation of Government Employees v. FLRA, 850 F.2d 782 (D.C.Cir.1988) ("AFGE "), that claims of statutory impediments to an arbitrator's jurisdiction could be raised to defeat finality in an unfair labor practice proceeding, it concluded that that decision did not apply to mere contractual bars to arbitral authority. See SSA III, 41 F.L.R.A. at 768. Finally, the Authority concluded that SSA II and Arbitrator Jaffe's decision had no effect on any prior decisions of Arbitrator Smith that had already become final and binding. See id. at 773.
 
 II. ANALYSIS
 A. Standard of Review
 
 10
 The FLRA's decision as to what constitutes an unfair labor practice under its statute is ordinarily entitled to substantial deference. See AFGE, 850 F.2d at 785 (citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). The FLRA maintains here that it is an unfair labor practice for SSA not to comply with an arbitral award despite the arbitrator's lack of contractual authority to render it, as long as that award has become "final" by exhaustion of available appeals. The resolution of that issue involves the interplay of several statutory provisions in the FSLMRS administered by the FLRA. Specifically, we must decide whether the FLRA can reasonably rule that completion of the limited procedure for judicial review of removal actions incorporated by § 7121(f) constitutes "finality" for purposes of § 7122(b)'s injunction that "[a]n agency shall take the actions required by an arbitrator's final award."
 
 
 11
 To begin with, the FLRA's broad authority to interpret its enabling statute must be exercised in light of the cardinal principle that if Congress has addressed the question at hand and its meaning is clear, that meaning governs. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The statute here, however, does not specify when arbitrations that follow the § 7121(f) Federal Circuit review procedure are "final," nor does it specify which "final award[s]" § 7122(b) requires compliance with.[6] The central issue in this case thus implicates the FLRA's "special function of applying the general provisions of the FSLMRS to the complexities of federal labor relations." Bureau of Alcohol, Tobacco, & Firearms v. FLRA, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (citation omitted). The FLRA must fill in a statutory gap in a way that gives content to Congress' goals. See Chevron, 467 U.S. at 843-44, 104 S.Ct. at 2781-82. Deference is especially appropriate in such instances. See Pauley v. BethEnergy Mines, Inc., --- U.S. ----, ----, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991); see also Department of Health & Human Services, Family Support Administration v. FLRA, 920 F.2d 45, 48 (D.C.Cir.1990) (arguing that the more important reason for deference to the FLRA is not its expertise in labor relations but that "Congress delegated [to it] the mixed legal-policy function of applying the statute"). Under the second prong of Chevron, the issue devolves into whether the agency's construction of the finality provisions is a reasonable one. See Chevron, 467 U.S. at 843-44, 104 S.Ct. at 2781-82.
 
 B. Reasonableness of FLRA's Interpretation
 
 12
 With respect to an arbitration reviewable directly by the FLRA under § 7122(a), § 7122(b) prevents any party from challenging the award in a later unfair labor practice proceeding. See Department of Health & Human Services, Health Care Financing Administration v. American Federation of Government Employees, Local 1923, 35 F.L.R.A. 491, 494-95 (1990); see also United States Department of Justice v. FLRA, 792 F.2d 25, 28-29 (2d Cir.1986) (federal courts do not have jurisdiction to review an underlying arbitration award in an appeal of an unfair labor practice decision). In such cases, opportunity knocks but once. Failure to comply with an award after it is affirmed on appeal to the FLRA or after time for appeal has run out violates § 7122(b), which mandates compliance with an award, and thus constitutes an unfair labor practice. See United States Army, Adjutant General Publications Center v. American Federation of Government Employees, Local 2761, 22 F.L.R.A. 200, 201-03 (1986). The FLRA's decision in this case extends that bar to the parallel situation of awards in removal cases which, under § 7121(f), can only be appealed by OPM to the Federal Circuit, rather than to the FLRA. Once the Federal Circuit rejects the appeal, the award becomes final and failure to comply constitutes an unfair labor practice. The FLRA justifies this interpretation in terms of the relevant congressional policies:
 
 
 13
 In our view, the purposes and policies of the Statute identified and discussed by the Authority and the courts in denying indirect review of the merits of an arbitration award in an unfair labor practice proceeding for refusing to comply with the award are best served in this case by enforcing the mandate of section 7122(b): the [SSA] shall take the actions required by the Arbitrator's final award.... [T]he [ALJ's opposite] approach has nothing to commend it in terms of the Statute's strong endorsement of arbitration as the preferred means of resolving labor disputes with dispatch and finality.
 
 
 14
 SSA III, 41 F.L.R.A. at 768.
 
 
 15
 Treating, for finality purposes, arbitration awards appealed to the Federal Circuit under § 7121(f) in the same manner as awards appealed to the FLRA under § 7122(a) appears to be eminently reasonable. The truncated procedures for review of § 7121(f) awards in removal cases reflect a specific legislative intent to put a special premium on finality in cases where employees have been terminated from their jobs. See S.REP. NO. 969, 95th Cong., 2d Sess. 64 (1978) (emphasizing that OPM should seek judicial review only in "exceptional cases"). Clearly, according the same degree of finality to an award that OPM has not convinced the Federal Circuit to review as to an award affirmed by the FLRA under § 7122(a) is a plausible enough interpretation of the legislative scheme.
 
 
 16
 Nonetheless, SSA attacks the FLRA's accommodation on the ground that § 7122(b)'s mandate of compliance with final decisions was meant to apply only to decisions appealable directly to the Authority under § 7122(a), not to decisions which are only subject to discretionary Federal Circuit review under § 7121(f). The text of § 7122(b) lends no support to that selective interpretation. Although § 7122 is entitled "Exceptions to Arbitral Awards," the crucial sentence in § 7122(b) simply states: "An agency shall take the actions required by an arbitrator's final award." It certainly does not restrict "final award[s]" to ones appealable under § 7122(a). And there is no explicit statutory guidance as to when matters subject to § 7121(f) review to the Federal Circuit become "final." Because all awards must become final and enforceable at some point, the FLRA's decision to declare that finality for § 7121(f) arbitration awards exists at the point when the Federal Circuit denies review is certainly reasonable.
 
 C. Relationship of this Case to AFGE
 
 17
 SSA argues alternatively that the Authority's interpretation of when the Bigelow award became final is irrelevant because this case is directly controlled by our prior ruling in AFGE. In that case, this court found that it was not "arbitrary and capricious" for the FLRA to permit an agency to defend against an unfair labor practice claim based on its refusal to honor an arbitration award by arguing that a federal statute (specifically, 38 U.S.C. § 4110, governing disciplinary actions against Veterans Administration health professionals) precluded the arbitrator's jurisdiction over the original claim. AFGE, 850 F.2d at 783. SSA contends that the FLRA is bound in this case by the reasoning it employed to allow the challenge in AFGE. Specifically, SSA emphasizes that in AFGE we cited the fact that similar challenges to an arbitrator's jurisdiction are allowed in private arbitration enforcement proceedings, see id. at 785, and the fact that in § 7121(f) appeals the agency itself has no right to seek review in the Federal Circuit, but is dependent on OPM's discretion. See id. at 786. SSA points out that both those considerations are present here as well, and strongly militate toward the same enforcement defense permitted in AFGE. SSA makes too much of these similarities, however. In this case, as in AFGE, this court must affirm the FLRA's decision if it is reasonable; it is not controlling that some of the reasons supporting the prior decision also apply to the instant case. The Authority may plausibly find that another, more important factor in that case, the existence of a statutory bar to the arbitrator's jurisdiction, is not present here to justify an exception to the finality principle; i.e., the parties' arbitration agreement simply does not merit the level of obedience that a statute demands. Put another way, the FLRA has decided to distinguish a case of a challenge to an arbitrator's "jurisdiction" based on another federal statute from one predicated on "arbitrability"--the claim that the arbitrator has exceeded his authority under a collective bargaining or arbitration agreement.[7] We think the Authority may sensibly conclude that the difference between those cases is great enough for the overriding principle of arbitral finality to outweigh the factors cited in AFGE.D. SSA's Dire Predictions
 
 
 18
 SSA predicts ominously that the FLRA's decision in this case would lead to ludicrous results in cases to follow. If the Authority does not allow contractual jurisdictional challenges in a case where it has already determined that the arbitrator lacked jurisdiction, "virtually anyone solicited by one of the parties to 'arbitrate' a dispute about a firing could reinstate the 'aggrieved' individual even if his authority had long since expired, and presumably, even if he never had jurisdiction at all, and the agency would have no right to protest." SSA Brief at 28. That need not be so. The more egregious an arbitrator's usurpation of jurisdiction, the more likely it is that the Federal Circuit will respond positively to OPM's petition for review. The specter of a pretender "arbitrating" claims without the federal employer's consent would surely be perceived to have disastrous effects for the executive branch, and thus merit review. There is a safety net at the bottom of SSA's slippery slope.
 
 
 19
 Admittedly, the Federal Circuit may not take all cases where an arbitrator has erred. But the FLRA is essentially correct in its reasoning that
 
 
 20
 this [§ 7703(d) ] scheme [is] a deliberate choice by Congress to further the policy of arbitration as a final and binding means of expeditiously resolving labor disputes. Consequently, we refuse to frustrate that deliberate choice and that policy by permitting the question of the Arbitrator's jurisdiction to be litigated in the unfair labor proceeding when the Federal Circuit has rejected OPM's petition for review.
 
 
 21
 SSA III, 41 F.L.R.A. at 771, Cf. United States v. Fausto, 484 U.S. 439, 448-49, 108 S.Ct. 668, 674, 98 L.Ed.2d 830 (1988) ("It seems to us evident that the absence of provision for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather [sic] manifestation of a considered judgment that they should not have statutory entitlement to review for adverse action....").
 
 
 22
 E. Equitable Discretion to Refuse Enforcement
 
 
 23
 The FLRA's unfair labor practice orders are not self-enforcing. In cases like this one, the FLRA must apply to the federal courts for enforcement of its orders. SSA argues that we should exercise our equitable discretion and refuse to enforce the FLRA's order because of the peculiar circumstances of this case, i.e., that Arbitrator Smith significantly overstepped his authority under the agreement and that questions have been raised as to his impartiality. SSA's argument does not persuade.
 
 
 24
 Its "equity" argument relies heavily on Judge Posner's recent opinion in NLRB v. P*I*E Nationwide, Inc., 894 F.2d 887 (7th Cir.1990). There, the Seventh Circuit also emphasized that the NLRB (like the FLRA) must go to a court of appeals and ask for an injunction to enforce its orders. See id. at 892-93. In utilizing its equitable authority to issue injunctions in these cases, a court is not "disabl[ed] from exercising a complementary power of equitable restraint and forbearance." Id. at 893. Judge Posner, however, distinguished the permissible use of this power from discredited pre-New Deal "labor injunctions" by noting the constraints under which it should be exercised:
 
 
 25
 [W]e do not mean to suggest that the court is entitled to substitute its conception of equitable labor relations for that of Congress and the Board. The court must take as given the value choices embodied in the statutes and policies administered by the Board, but is entitled and in fact required to consider whether the enforcement of the Board's order would violate equitable principles that are neutral with regard to those value choices.
 
 
 26
 Id. He would further cabin a court's discretion to refuse enforcement by requiring that a specific rule of equity, such as laches or harassment, support the refusal. See id. In his words, "a modern federal equity judge does not have the discretion of a medieval Lord Chancellor to grant or withhold a remedy." Id.
 
 
 27
 SSA refers to only one case in our circuit in which equitable discretion has been discussed as a reason to deny enforcement. InNLRB v. Maywood Plant of Grede Plastics, 628 F.2d 1 (D.C.Cir.1980) (per curiam), we stated that "a court in its supervisory role may decline to enforce portions of a Board order that require affirmative action when that particular action has become futile at the time enforcement is sought." Id. at 7. Obviously, that circumstance is not present here.
 
 
 28
 Even if Judge Posner's somewhat broader rule were adopted as the law of this circuit, SSA has pointed to no particular rule of equity under which we should withhold enforcement once we find the FLRA's order to be reasonable. Indeed, we cannot ourselves identify any such rule to apply here or even conclude that the result in this case is necessarily inequitable. For unexplained reasons, OPM did not raise the issue of jurisdiction in its petition to the Federal Circuit. Had it done so, SSA might have attained the relief it now seeks. Holding the government to the consequences of that failure is not necessarily, in any jurisprudential sense, inequitable.[8]
 
 III. CONCLUSION
 
 29
 The FLRA's determination that contractual limitations on an arbitrator's jurisdiction may not be raised in an unfair labor practice proceeding is a reasonable interpretation of its governing statute. We deny SSA's petition for review and grant the FLRA's application for enforcement of its order.
 
 
 30
 It is so ordered.
 
 
 
 [1]
 Section 7122(a) states:
 Either party to arbitration under this chapter may file with the Authority an exception to any arbitrator's award pursuant to the arbitration (other than an award relating to a matter described in section 7121(f) of this title). If upon review the Authority finds that the award is deficient--
 (1) because it is contrary to any law, rule, or regulation; or
 (2) on other grounds similar to those applied by Federal courts in private sector labor-management relations;
 the Authority may take such action and make such recommendations concerning the award as it considers necessary, consistent with applicable laws, rules, or regulations.
 
 
 [2]
 Section 7512 states, in pertinent part, that "[t]his subchapter applies to--(1) a removal...."
 
 
 [3]
 Section 7121(f) states in relevant part:
 In matters covered under sections 4303 and 7512 of this title, which have been raised under the negotiated grievance procedure in accordance with this section, section 7703 of this title pertaining to judicial review shall apply to the award of an arbitrator in the same manner and under the same circumstances as if the matter had been decided by the [Merit Systems Protection] Board.
 
 
 [4]
 Section 7703(d) provides:
 The Director of the Office of Personnel Management may obtain review of any final order or decision of the Board by filing a petition for judicial review in the United States Court of Appeals for the Federal Circuit if the Director determines, in his discretion, that the Board erred in interpreting a civil service law, rule, or regulation affecting personnel management and that the Board's decision will have a substantial impact on a civil service law, rule, regulation, or policy directive.... The granting of the petition for review shall be at the discretion of the Court of Appeals.
 Obviously, in this context, it is the final decision of the arbitrator, and not the Board, that is subject to review.
 
 
 [5]
 Respectively, those provisions make it an unfair labor practice "to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter" and "to otherwise fail or refuse to comply with any provision of this chapter."
 
 
 [6]
 SSA argues that this case involves the interpretation of § 7703(d), the provision governing review of arbitrators' removal awards by the Federal Circuit, which has not been entrusted primarily to the FLRA, and thus the FLRA's interpretation is entitled to no deference. We disagree. The dispute in this case does not involve the mechanism or standards for Federal Circuit review, which are covered directly by § 7703(d). Rather, it concerns the effect of the completion of that review on a party's ability collaterally to attack the underlying arbitrator's award in an unfair labor practice proceeding. That question is governed by § 7122(b), the finality section of the FSLMRS, an act that the FLRA does administer
 
 
 [7]
 The latter concept is more often tied to the merits of the dispute. See Washington-Baltimore Newspaper Guild, Local 35 v. The Washington Post, 959 F.2d 288, 291-92 (D.C.Cir.1992). That fact further distinguishes the two situations
 
 
 [8]
 Our recent decision in FLRA v. Department of Commerce, National Oceanic and Atmospheric Association, National Weather Service, 962 F.2d 1055 (D.C.Cir.1992), is cited by SSA for the proposition that, without resort to equity principles, we are free under the statute to refuse the Authority's application for enforcement even if we uphold the FLRA's decision. This argument fundamentally misconstrues Department of Commerce. There, a union filed an unfair labor practice charge with the FLRA, which held that the agency violated the law and ordered the agency to cease and desist. When the agency did not comply fully with the award, the FLRA applied to this court for enforcement under § 7123(b). The FLRA argued that the court could not examine the merits of the order because the sixty day time period for the agency to petition for review under § 7123(a) had lapsed. We rejected that argument and held that our ability to review the merits of an order on direct review did not depend on whether jurisdiction was invoked through a petition for review under § 7123(a) or an application for enforcement under § 7123(b). See id. at 1058. Department of Commerce thus dealt only with the scope of our jurisdiction to review the merits of an order when the agency seeks enforcement of that order; it said nothing about our discretion to enforce an order when, as in this case, we conclude that it is a reasonable exercise of the FLRA's authority
 Because we affirm the Authority's decision not to entertain the claim of an arbitrator's lack of contractual authority in an unfair labor practice proceeding, we need not address the validity of the FLRA's determination that SSA II did not affect those decisions of Arbitrator Smith that were already final and binding.