962 F.2d 1055
 140 L.R.R.M. (BNA) 2281, 295 U.S.App.D.C. 263
 FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,
v.
UNITED STATES DEPARTMENT OF COMMERCE, National Oceanic and
Atmospheric Administration, National Weather
Service, Silver Spring, Maryland, Respondent,
National Weather Service Employees Organization, Intervenor.
 No. 91-1175.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 21, 1992.
Decided April 24, 1992.
Rehearing Denied June 25, 1992.
 
 James F. Blandford, Attorney, Federal Labor Relations Authority, with whom William E. Persina, Sol., William R. Tobey, Deputy Sol., and Arthur A. Horowitz, Associate Sol., were on the brief, for petitioner.
 William G. Cole, Attorney, Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and William Kanter, Attorney, were on the brief, for respondent.
 Richard J. Hirn, for intervenor.
 Before SILBERMAN, WILLIAMS, and SENTELLE, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 SENTELLE, Circuit Judge:
 
 
 1
 The Federal Labor Relations Authority ("FLRA" or "Authority") seeks judicial enforcement of its order directing the National Weather Service ("NWS") to supply the National Weather Service Employees Organization ("Union") the names, duty stations, and locations of all bargaining unit employees who had received outstanding or commendable personnel evaluations. Attacking the merits of the order, the NWS asserts that it did not commit an unfair labor practice ("ULP") when it refused to provide the Union with the requested information. The FLRA argues that we have no jurisdiction to review the merits as the NWS did not timely petition for judicial review of the order. Concluding that we do have jurisdiction to consider the merits, we deny enforcement because disclosure of the requested information would violate the Privacy Act of 1974.
 
 I. BACKGROUND
 A. Facts
 
 2
 The NWS, a component of the Commerce Department's National Oceanic and Atmospheric Administration, uses a two-part evaluation form for its employees under the General Workforce Performance Appraisal System--the first part of the form requires the rater to give a narrative explanation of the worker's performance, and the second part characterizes the worker as outstanding, commendable, fully successful, marginal, or unsatisfactory. During the 1986 rating year, about 9% of NWS workers received outstanding ratings, 41% received commendable ratings, and the remaining 50% received fully successful, marginal, or unsatisfactory ratings.
 
 
 3
 In March of 1986, the Union's Western Region Chairman, Mr. Alan Olson, advised the NWS about the Union's concern with the NWS's performance appraisal system; specifically, the granting of awards and outstanding ratings. When the NWS did not address these concerns to Mr. Olson's satisfaction, he filed a grievance which was denied at the first and second steps of the grievance procedure. The Union invoked arbitration in September of 1986, but subsequently withdrew the invocation of arbitration.
 
 
 4
 In the meantime, Mr. Olson wrote to the Acting Regional Director of the Western Region of NWS requesting that he supply the Union with the "names and duty stations of bargaining unit employees in the Western Region who received ratings of commendable or outstanding based on the rating period of 1985-86." Brief of Petitioner at 5. He explained that the Union would use the information to understand better the rating system and to protect bargaining unit employees from inequities or improper administration. Citing concerns raised by the Privacy Act of 1974, the NWS refused to supply the names of employees receiving outstanding or commendable ratings, but offered to provide the names and duty stations of employees receiving awards. Finding this proposal unsatisfactory, the Union filed a ULP complaint with the FLRA.
 
 B. The FLRA Proceedings
 
 5
 An FLRA Administrative Law Judge ("ALJ") considered the Union's ULP charge. Department of Commerce, National Weather Service and National Weather Service Employees Organization, OALJ-88-133 (Sept. 9, 1988) ("National Weather Service "), reprinted in Joint Appendix ("J.A.") 86. The Union argued that pursuant to § 7114(b) of the Federal Service Labor-Management Relations Statute ("FSLMRS"), the NWS had an obligation to disclose information that "is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining" if the release of such information is "not prohibited by law." Respondent's Post-Hearing Brief at 21-22 (quoting 5 U.S.C. § 7114(b)(4)(B)), reprinted in J.A. at 63-64. The ALJ agreed that the information the Union requested met the criteria for release under § 7114(b), but noted that "there remains the question whether disclosure would conflict with the Privacy Act," 5 U.S.C. § 552a. National Weather Service, slip op. at 7.
 
 
 6
 The ALJ explained that the Privacy Act incorporates the bar contained in exemption 6 of the Freedom of Information Act ("FOIA") against disclosure of information which "would constitute a clearly unwarranted invasion of personal privacy." Id. at 7-8 (citing 5 U.S.C. § 552(b)(6)). After balancing the Union's need for the information against the rated employees' privacy interests, the ALJ concluded that "disclosure of unsanitized data would have resulted in a clearly unwarranted invasion of privacy." Id. at 9 (citations and footnote omitted). As such, disclosure would violate the Privacy Act, and the ALJ determined that under § 7114(b), the Union could not receive the names of bargaining unit employees who had received outstanding or commendable ratings. Id.
 
 
 7
 The Authority reversed the ALJ's decision on November 13, 1990. United States Dep't of Commerce, National Weather Service, Silver Spring, Maryland and National Weather Service Employees Organization, 38 F.L.R.A. 120 (1990) ("National Weather Service Employees Organization "). The Authority agreed with the ALJ that the Union had shown sufficient need for the information to satisfy § 7114(b), id. at 131, but disagreed with the ALJ's Privacy Act balance of "employees' privacy against the public interest in disclosure." Id. at 132.
 
 
 8
 On the disclosure side of the balance, the Authority found that the Union's desire to use the requested information to better represent bargaining unit employees comprised a substantial public interest. Id. (citing Department of the Navy, Portsmouth Naval Shipyard, 37 F.L.R.A. 515 (1990)). On the privacy side, the Authority found that the requested information was not "stigmatizing," id. at 134, and that only a minimal invasion would occur because the Union did not intend to disseminate broadly the requested information. Id. at 135. Accordingly, the Authority held that the NWS's refusal to release the 1985-86 rating information constituted a ULP under 5 U.S.C. § 7116(a), and ordered the NWS to "cease and desist" from such practices. Id. at 136. The Authority also ordered the NWS to provide the requested 1985-86 rating period information and to post at NWS offices a copy of a ULP violation notice "on forms to be furnished by the" FLRA. Id. at 136-37.
 
 
 9
 Thereafter, the NWS had difficulty complying fully with the FLRA order. First, the NWS discovered that it maintained ratings information for only three years; thus, the 1985-86 information had been discarded prior to the FLRA's 1990 order. When advised of this, the Union requested the names of workers receiving a commendable or outstanding rating for the 1989-90 period. After it provided this information, however, the NWS declared it would deny any future requests for similar information. Brief of Respondent at 10-11. Additionally, when the NWS posted the ULP notice, it did not use official FLRA forms as ordered by the Authority. The notice posted by the NWS was of a different size than the official form and did not provide the address and telephone number of the FLRA, which employees might call if they had questions about the notice. In response to this noncompliance and the NWS's declaration regarding future requests for ratings information, the FLRA petitioned this Court under 5 U.S.C. § 7123(b) for enforcement of its order.
 
 II. ANALYSIS
 A. Jurisdiction Under 5 U.S.C. § 7123
 
 10
 At the outset, the FLRA asserts that the period in which the NWS could challenge the merits of the 1990 order under the judicial review provision of the FSLMRS, 5 U.S.C. § 7123, has lapsed. The FLRA explains that pursuant to § 7123(a), "any person aggrieved" by an FLRA order may file a petition for judicial review, but must do so "during the 60-day period" after the order was issued. 5 U.S.C. § 7123(a). In contrast, § 7123(b), under which the FLRA brought this action, enables the FLRA to seek judicial enforcement of its orders without any temporal limitations. Id. § 7123(b). From this statutory scheme, the FLRA asserts that the NWS had but 60 days to bring before this Court its attack on the merits of the order. Because that 60-day period elapsed before the initiation of this enforcement action under § 7123(b),[1] the FLRA claims that we have no jurisdiction to consider the NWS's arguments.
 
 
 11
 As the FLRA correctly insists, the jurisdiction of federal courts "is defined by Article III of the Constitution and by the federal statutes enacted thereunder." Karcher v. May, 484 U.S. 72, 77, 108 S.Ct. 388, 392-393, 98 L.Ed.2d 327 (1987). The difficulty for the FLRA is that the statute at issue here provides us with jurisdiction to consider the merits of the Authority's order.
 
 
 12
 Specifically, § 7123(c) provides that when a party seeks review under § 7123(a) or enforcement under § 7123(b), "the court ... shall have jurisdiction of the proceeding and of the question determined therein ... and may make and enter a decree affirming and enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Authority." 5 U.S.C. § 7123(c). Nothing in § 7123(c) commands or implies that the scope of our jurisdiction changes depending on whether an action is brought under § 7123(a) or (b). Thus, whether a party comes before us under § 7123(a) or (b), we have jurisdiction to review the "question determined" in the FLRA order and to issue whatever remedy our review determines appropriate, including the "setting aside" of the FLRA order.
 
 
 13
 The FLRA contends that if we allow the NWS to obtain "indirect review" of the 1990 order, we would "defeat the intent of Congress to impart finality into the [FLRA's] proceedings." Brief of Petitioner at 22. This argument ignores the distinction between a court's role in reading statutes and Congress' role in writing them. Addison v. Holly Hill Co., 322 U.S. 607, 618, 64 S.Ct. 1215, 1221-1222, 88 L.Ed. 1488 (1944) ("Construction is not legislation and must avoid 'that retrospective expansion of meaning which properly deserves the stigma of judicial legislation.' " (quoting Kirschbaum Co. v. Walling, 316 U.S. 517, 522, 62 S.Ct. 1116, 1119, 86 L.Ed. 1638 (1942))). If the FLRA has concerns about the breadth of our jurisdiction under the FSLMRS, then it should express them to Congress, for absent extraordinary circumstances not present here, the judiciary is constrained to exercise that jurisdiction which Congress provides. Cohens v. Virginia, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821) (Marshall, C.J.) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.").
 
 
 14
 Indeed, Congress has shown in other judicial review provisions that it knows precisely how to ensure the type of finality urged by the FLRA. For example, the judicial review provision of the Occupational Safety & Health Act of 1970, 29 U.S.C. § 660, provides that if a "person adversely affected" by an Occupational Safety & Health Commission order does not petition for review within 60 days, then the order "shall be conclusive in connection with any petition for enforcement which is filed" by the Commission. 29 U.S.C. § 660(b), construed in United States v. Howard Elec. Co., 798 F.2d 392, 395 (10th Cir.1986) (finding that the court lacks jurisdiction under 29 U.S.C. § 660 to review attacks of a Commission order when the attacks arise in a Commission enforcement action brought after the 60-day time limit). See also 30 U.S.C. § 816(b) (containing similar judicial review provision for the Federal Mine Safety and Health Act of 1977, 30 U.S.C. §§ 801-78); 42 U.S.C. § 3612(i) (containing analogous judicial review provision for the Fair Housing Act, 42 U.S.C. §§ 3601-19, 3631).
 
 
 15
 In any event, the FLRA's complaint that our plain-language reading of § 7123(c) saps the significance of § 7123(a)'s 60-day time limit is incorrect. If a charging party loses before the Authority, thereby leaving nothing for the FLRA to enforce under § 7123(b), then the charging party must file its petition for review within the 60-day time limit of § 7123(a) or suffer the jurisdictional consequences. Hence, this Court's interpretation does not reduce to surplusage any part of § 7123, and it respects the terms and structure used by Congress to define our jurisdiction to review decisions of the FLRA. K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."). As we hold that the 60-day time limit under § 7123(a) does not deprive this Court of jurisdiction to consider the merits of an order that the FLRA seeks to enforce under § 7123(b), we turn now to consider the merits of the 1990 order.
 
 B. The Merits of the FLRA's 1990 Order
 
 16
 In ordering release of the names and duty stations of those bargaining unit employees who earned commendable or outstanding ratings, the FLRA made the following findings: (1) the NWS normally maintained this information; (2) the information was reasonably available and necessary for a full and proper understanding or discussion of subjects within the scope of collective bargaining; and (3) no other provision of law, such as the Privacy Act, barred release of the information. National Weather Service Employees Organization, 38 F.L.R.A. at 128-29, 132; see also FLRA v. Department of Treasury, 884 F.2d 1446, 1449-50 (D.C.Cir.1989) ("Department of Treasury ") (discussing the elements of § 7114(b)). In contesting the FLRA's order to release the names and ratings information, the NWS objects only to the FLRA's conclusions regarding the Privacy Act, and we direct our review accordingly.
 
 
 17
 The Privacy Act prevents the government from releasing personal information except as required by the FOIA. 5 U.S.C. § 552a(b)(2). In turn, the FOIA allows agencies to withhold information in personnel files the "disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Id. § 552(b)(6). This limitation on release, known as exemption 6, requires a balance of the "harm to the individual whose privacy is breached against the public interest served by disclosure." Department of Treasury, 884 F.2d at 1451 (citing Department of the Air Force v. Rose, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976)).
 
 
 18
 In its assessment of the harm to individual privacy, the Authority simply observed that it had previously approved the release of similar information and declared it found nothing "stigmatizing" in identifying employees with high ratings. 38 F.L.R.A. at 133-34. Nonetheless, we find that NWS employees who received outstanding or commendable ratings have a substantial interest in maintaining the privacy of their evaluations. That the information here is favorable does not diminish this interest. "[D]isclosure even of favorable information may well embarrass an individual or incite jealousy in his or her co-workers." Ripskis v. HUD, 746 F.2d 1, 3 (D.C.Cir.1984) (opining that release of favorable ratings information would likely "spur unhealthy comparisons among HUD employees and thus breed discord in the workplace"). And, of course, a list identifying those employees who received outstanding and commendable ratings reveals by omission the identities of those employees who did not receive high ratings, creating an invasion of their privacy.
 
 
 19
 The Authority also erred by finding relevant the Union's assertion that it would not disseminate the information. 38 F.L.R.A. at 135. We have emphasized that a requester's intended use of information plays no role in assessing the invasion of privacy, for if information "must be released to one requester, it must be released to all, regardless of the uses to which it might be put." Painting and Drywall Work Preservation Fund v. HUD, 936 F.2d 1300, 1302 (D.C.Cir.1991). Applying this law, we see nothing in the record mitigating the substantial invasion of privacy that all NWS employees would suffer if the NWS released the information requested by the Union.
 
 
 20
 On the disclosure side of the balance, the Authority construed the "public interest to be examined" as "that embodied in the [FSLMRS]." 38 F.L.R.A. at 132 (citing Department of the Navy, Portsmouth Naval Shipyard, 37 F.L.R.A. 515 (1990) ("Portsmouth ")). The Authority then concluded that the "early resolution of potential grievances and the proper administration of agency performance appraisal systems are the type of public interests which disclosure of information is intended to further." Id.
 
 
 21
 In defining the exemption 6 public interest as incorporating values enshrined in the FSLMRS, the Authority misread the FOIA. The Department of Treasury court addressed precisely this issue, and explained that the "collective bargaining values" contained in the FSLMRS have no place in the exemption 6 balance. 884 F.2d at 1453. Instead, we held that for purposes of the exemption 6 balance, the public interest is defined solely by the values animating the FOIA; to wit, ensuring " 'that the Government's activities be opened to the sharp eye of public scrutiny.' " Department of Treasury, 884 F.2d at 1451 (quoting Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1989)). By crediting early resolution of potential union grievances, we find that the Authority improperly loaded the public interest side of the exemption 6 balance with collective bargaining values.
 
 
 22
 A recent First Circuit decision highlights the Authority's mistake. As noted above, the Authority cited its Portsmouth decision for the proposition that the interests embraced by the FSLMRS are incorporated in the exemption 6 public interest. National Weather Service Employees Organization, 38 F.L.R.A. at 132 (citing Portsmouth, 37 F.L.R.A. 515 (1990)). This precedential pillar, though, has been removed by the First Circuit, which set aside Portsmouth based on the reasoning espoused in Department of Treasury. See FLRA v. Department of the Navy, 941 F.2d 49, 54 (1st Cir.1991) ("Department of the Navy ") (agreeing with Department of Treasury that "the public interest in collective bargaining and labor organization is unrelated to [the] FOIA").
 
 
 23
 Nevertheless, we acknowledge that this case differs from Department of Treasury and Department of the Navy, in that the Authority found that the information sought here may shed light on the NWS's operation of its rating system. 38 F.L.R.A. at 134. The requested information therefore arguably falls within "the basic purpose of the [FOIA] 'to open agency action to the light of public scrutiny.' " Department of the Air Force v. Rose, 425 U.S. at 372, 96 S.Ct. at 1604.
 
 
 24
 As in Ripskis, however, we do not believe that the public interest served by release of identifying information overcomes the substantial invasion of privacy that would result. A mandatory personnel evaluation, whether favorable or not, is intensely personal, and counsel has not demonstrated that ratings have traditionally been subject to disclosure, unlike performance awards. Consequently, employees have a substantial interest in keeping this information private, and we are not convinced that the public interest in disclosure found by the FLRA outweighs this interest.[2]III. CONCLUSION
 
 
 25
 For the reasons discussed above, we conclude that the FLRA misapplied the balancing test required by exemption 6 of the FOIA by slighting the substantial privacy interest employees have in their ratings and by freighting the balance with interests not encompassed by the FOIA. Accordingly, we set aside the Authority's order of November 13, 1990, and hold that the NWS did not violate § 7114(b) of the FSLMRS when it refused to provide identifying information regarding those bargaining unit employees who received outstanding or commendable ratings. The petitioner's request for enforcement is therefore
 
 
 26
 Denied.
 
 
 
 [1]
 The Authority issued its order on November 13, 1990, and invoked our jurisdiction to enforce the order on April 12, 1991
 
 
 [2]
 Although not an essential part of our analysis, we note that the Union has alternative means for obtaining rating information about the employees it represents: it may distribute questionnaires or conduct confidential face-to-face interviews. See Painting and Drywall, 936 F.2d at 1303 (suggesting alternative means that a union may use to obtain information about employees); Ripskis, 746 F.2d at 3-4 (considering whether public interest may be served without invading privacy interest). Additionally, the NWS has pledged to disclose rating information without releasing identifying data. Brief of Respondent at 41