**COLORADO NURSES ASSOCIATION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**VETERANS ADMINISTRATION MEDICAL CENTER, FT. LYONS, COLORADO, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**Colorado Nurses Association, Intervenor.**

Nos. 87–1104, 87–1242.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 27, 1987.

Decided July 19, 1988.

Christine R. Whittaker, Atty., U.S. Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., and Marc Richman, Atty., U.S. Dept. of Justice, Washington, D.C., were on the brief, for petitioner Veterans Admin. Medical Center. William Kanter, Atty., U.S. Dept. of Justice, Washington, D.C., also entered an appearance for petitioner.

George Kaufmann, with whom Joseph E. Kolick, Jr., Washington, D.C., was on the briefs, for petitioner/intervenor Colorado Nurses Ass'n.

Robert J. Englehart, Deputy Sol., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., and William E. Persina, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent. Arthur A. Horowitz, Atty., Federal Labor Relations Authority,

Washington, D.C., also entered an appearance for respondent.

Patrick J. Riley, Washington, D.C., was on the brief for amicus curiae National Federation of Federal Employees, urging affirmance.

Before BUCKLEY and WILLIAMS, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

This case concerns the negotiability of six proposals presented by the Colorado Nurses Association to the Veterans Administration Medical Center in Fort Lyons, Colorado. The Federal Labor Relations Authority held that two of the six proposals are non-negotiable under the Federal Service Labor–Management Relations Act. Both parties petitioned for review. Because we find that Congress granted the VA Administrator exclusive discretion to establish regulations concerning the working conditions of its medical employees, we conclude that the Veterans Administration need not bargain over any of the contested proposals.

## I. BACKGROUND

The Colorado Nurses Association ("union") represents a bargaining unit of the Department of Medicine and Surgery ("DM & S") at the Veterans Administration's Medical Center in Fort Lyons, Colorado. In the course of negotiating a collective bargaining agreement, the union offered six proposals that the Veterans Administration ("VA") declared to be non-negotiable. The first would establish a grievance and arbitration procedure for DM & S professional medical employees concerning conditions of employment unrelated to disciplinary and adverse actions; the remaining five would impose certain limits on the VA's flexibility in establishing work schedules.

The VA refused to negotiate these matters because of its claim that the statute establishing the DM & S, 38 U.S.C. §§ 4101

*et seq.* (1982) ("DM & S Statute") had granted its Administrator exclusive authority to prescribe the working conditions of all DM & S medical employees. As a consequence, the VA declared that it was not required by the Federal Service Labor–Management Relations Act, 5 U.S.C. §§ 7101 *et seq.* (1982) ("FSLRA") to engage in collective bargaining with its nurses. Accordingly, the union filed an appeal with the Federal Labor Relations Authority ("FLRA").

The FLRA rejected the VA's claim of exemption from the duty to negotiate because it found no conflict between the VA Administrator's authority to establish working conditions for medical personnel and the VA's obligation, as a federal employer, to negotiate with its employees. It reached this conclusion on the basis of its reading of the DM & S Statute, the existence of collective bargaining between the VA and its medical employees, and relevant legislative history—including the history of an amendment to the DM & S Statute adopted in 1980 ("1980 Amendment"). On the merits, the agency held that the VA must bargain over four of the six proposals, but concluded that two of the union's scheduling proposals were nevertheless non-negotiable because they would infringe upon certain rights specifically reserved to management under 5 U.S.C. § 7106 (1982). *Colorado Nurses Association and VA Medical Center, Ft. Lyons, Colorado* ("FLRA Decision"), 25 F.L.R.A. 803 (Feb. 20, 1987).

Both parties petitioned for review.

## II. DISCUSSION

### A. The Statutory Framework

■ This case requires us to prescribe the reach of two statutes: the first governs the rights and terms of employment of VA medical professionals; the second, those of federal employees generally. While not denying that the FSLRA requires it to bargain with its non-professional employees, the VA contends that it is exempt from the obligation to engage in collective bargaining with its nurses because the DM & S Statute grants its Administrator the sole

authority to determine their conditions of employment "[n]otwithstanding any law." 38 U.S.C. § 4108 (1982).

The union argues that the case is controlled by the FSLRA, which was enacted as part of the Civil Service Reform Act of 1978. The FSLRA provides that federal employees "shall have the right.... to engage in collective bargaining with respect to conditions of employment...." 5 U.S.C. § 7102 (1982). "[C]onditions of employment" are defined as "personnel policies, practices, and matters, whether established by rule, regulation or otherwise...." 5 U.S.C. § 7103(a)(14) (1982). The matters raised in the union's proposals unquestionably fall within this category.

Our first task is to determine whether the Administrator's authority to prescribe the working conditions of DM & S employees "notwithstanding any law" is inconsistent with the VA's general obligation, under the FSLRA, to bargain with employees about working conditions. If we find it to be, our second task is to decide which statute prevails.

### B. The Statutory Interplay

The FLRA found no conflict between the Administrator's authority under section 4108 and the VA's general responsibility under FSLRA to bargain over conditions of employment. It reached this conclusion because it saw no evidence that in enacting section 4108, Congress intended to give the Administrator "exclusive control" over the conditions of employment of DM & S employees. 25 F.L.R.A. at 806–10.

■ Because the FLRA's decision required it to reconcile its organic statute with a statute not within its area of expertise, we owe it no particular deference. *See Professional Airways Sys. Specialists v. FLRA,* 809 F.2d 855, 857 n. 6 (D.C.Cir. 1987); *United States Dep't of Justice v. FLRA,* 709 F.2d 724, 729 n. 21 (D.C.Cir. 1983). We accept the FLRA's premise that collective bargaining is not necessarily inconsistent with an agency's general power to implement personnel policy through the use of regulations, *see, e.g., AFGE, Local*

*3488*, 12 F.L.R.A. 532, 533 (1983). In this case, however, the language, structure, and history of the DM & S Statute demonstrate that Congress intended that the Administrator have exclusive authority to prescribe regulations concerning conditions of employment.

■ As always, our first duty is to examine the statutory language. Section 4108 asserts that "the Administrator shall prescribe by regulation the ... conditions of employment" of medical employees, including nurses. We believe that by directing the Administrator to prescribe regulations—rather than simply issue or promulgate them—Congress intended that the Administrator determine the content of those regulations. The union contends nevertheless that there is room for the Administrator to negotiate about the content of regulations and then prescribe the results.

While the union's reading of "prescribe" could be reasonable in other circumstances, it is not a permissible one in this case. Section 4108 underscores the exclusive nature of the Administrator's authority by exempting its exercise from "any law, Executive order, or regulation." The purpose of this language is clear: when the Administrator prescribes regulations concerning conditions of employment, he is to be unhampered by the range of federal personnel statutes and regulations that might otherwise constrain his authority.

This interpretation is consistent with the structure of the DM & S Statute. Section 4108 is part of the comprehensive personnel system provided by Congress when it created the Department of Medicine and Surgery in 1946. Various other sections establish the procedures by which medical employees are appointed (38 U.S.C. §§ 4101 and 4106), trained (38 U.S.C. § 4113), paid (38 U.S.C. § 4107), and disciplined (38 U.S.C. § 4110). Section 4108 comes into play with respect to those conditions of employment not covered in other parts of the law.

Thus, section 4108 is an integral part of an independent personnel system that Congress has placed under the direct control of the Administrator. As such, it is exempt from all laws governing the terms and conditions of federal employment except as otherwise explicitly provided in the DM & S Statute (e.g., VA medical personnel are made eligible for civil service retirement benefits. 38 U.S.C. § 4109).

In its own analysis, the FLRA concedes that Congress intended certain sections of the DM & S Statute to be exclusive, but nevertheless concludes that no conflict exists between section 4108 and the provisions of the FSLRA. Furthermore, it asserts that this reading is supported by both "the Statute and its legislative history." FLRA Decision, 25 F.L.R.A. at 806. The agency then proceeds to infer the intent of section 4108 by attempting to drive an analytical wedge between it and other provisions of the law that are admittedly exclusive in their application.

Specifically, the FLRA cites "many references [in legislative history] to the need of the VA to have a free hand in removing incompetent DM & S professionals without the 'red tape' of civil service restrictions." The FLRA then refers to "[a]nother theme discussed throughout the legislative history," namely, the VA's need for flexibility in hiring medical personnel "without regard to civil service requirements"; and it observes that "Congress responded to this concern by providing in section 4106 of the DM & S Statute that professionals shall be appointed in accordance with regulations prescribed by the Administrator 'without regard to civil-service requirements.'" *Id.* at 807. Apparently, the FLRA would have us conclude, by negative inference, that Congress' failure to include a specific reference to civil service laws in section 4108 overrides the clear implication of the phrase, "notwithstanding *any* law" (emphasis added).

The FLRA acknowledges that the legislative history directly relating to section 4108 is sparse, consisting as it does of mere paraphrases of the statutory language in the House and Senate reports, and a single reference in House debate, to wit:

> [W]e know that people do not get sick by the clock. We found that in many of these hospitals under civil-service regulations and under the wage-hour law and

other regulations doctors practice 40 hours a week. As we have gone through hospitals and seen 4:30 come around, we have seen doctors put on their hats and walk out, because if they had worked a few minutes overtime, compensatory time would have had to be given them, and it would have taken a great deal of complicated figuring and bookkeeping to straighten it out. In section [7](b) we provided that notwithstanding any law, Executive order, or regulation, the Administrator shall prescribe by regulation the hours and conditions of employment and leaves of absence of doctors, dentists, and nurses.

91 Cong.Rec. 11,662–63 (1945) (Rep. Scrivner).

The agency notes that this history "demonstrates a recognition by Congress that with respect to 'conditions of employment,' DM & S needed flexibility to assure provision of patient care services," 25 F.L.R.A. at 808. Nevertheless, it rejects the idea that section 4108 operates "to preclude all collective bargaining about their conditions of employment." It finds this interpretation confirmed by

the legislative history of the 1980 amendments to title 38 [which] states that Congress did not "intend that any of the changes made by the legislation to the VA's health care personnel authorities detract in any way from employee rights under existing collective bargaining agreements between the VA and its employees." Explanatory Statement of Compromise Agreement on H.R.7102/S.2534 ["Explanatory Statement"], 126 Cong.Rec. H6850 (1980), reprinted in 1980 U.S.Code Cong. & Ad. News 2463, 2557, 2563. We interpret this language to be an express recognition between the VA and its professional employees, and a manifestation of an intent that the practice continue.

Id.

We are unimpressed by the FLRA's analysis. First, its references to the Statute's legislative history reinforce rather than refute our conclusion that when Congress enacted the law, it intended to establish an exclusive personnel system for DM & S employees. As is not unusual in such legislation, Congress stipulated certain details while leaving others to the discretion of the Administrator. In no way does this delegation of authority detract from the clear purpose of the language chosen by Congress when it wrote section 4108.

■ Second, we cannot understand the agency's evident reliance on the legislative history of a 1980 law to discern the meaning of statutory language adopted thirty-four years earlier. A law may be amended, superseded, or rescinded by another law, but not by legislative history. See Pierce v. Underwood, —— U.S. ——, —— ——, 108 S.Ct. 2541, 2549–2553, 101 L.Ed.2d 490 (1988); International Brotherhood of Electrical Workers, Local 474 v. NLRB, 814 F.2d 697 (D.C.Cir.1987).

Even if the 1980 Amendment and its legislative history were relevant, neither can be read to dilute the reach of the DM & S Statute. The Amendment itself reads as follows:

Notwithstanding any other provision of law, no provision of title 5 or any other law pertaining to the civil service system which is inconsistent with any provision of [the DM & S Statute] shall be considered to supersede, override, or otherwise modify such provision of this subchapter except to the extent that such provision of title 5 or of any such other law specifically provides, by specific reference to a provision of this subchapter, for such provision to be superseded, overriden, or otherwise modified.

38 U.S.C. § 4119 (1982). This language can hardly be read as amending section 4108 to subordinate the Administrator's authority to the collective bargaining requirements of the FSLRA. Moreover, the FLRA ignores the passage in the Explanatory Statement dealing with section 4119, which suggests that Congress meant precisely what it said:

The Senate recedes with an amendment to clarify that the general relationship between title 38 medical personnel system provisions ... and provisions in title 5 or elsewhere pertaining to the civil

service personnel system is such that no provisions from title 5 or elsewhere (whether *heretofore* or hereafter enacted) shall be considered to supersede, override, or otherwise modify title 38 provisions unless such other provision does so expressly by specific reference to the title 38 provision.

126 Cong.Rec. 20,761 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News at 2565 (emphasis added).

We find the use of the words "clarify" and "heretofore" significant as indicating an intent by the sponsors to affirm, in the face of apparent suggestions to the contrary, that provisions of the DM & S Statute had not been superseded by subsequent civil service laws. Thus, although the 1980 Amendment cannot effect a retroactive change in the DM & S Statute's meaning, it is clear from both its language and history that Congress had no purpose but to reaffirm the primacy of the original legislation.

■ Nor is it relevant that the VA has engaged in collective bargaining with its medical employees. Section 4108 gave the Administrator authority to establish working conditions without regard to any other law. While this authority conflicts with the mandatory collective bargaining provision of the FSLRA, it does not preclude the VA from choosing to negotiate about particular matters. The passage in the Explanatory Statement relied on by the FSLRA may therefore reasonably be read as an indication that Congress did not wish to upset the settled expectations of those VA employees working "under *existing* collective bargaining agreements."

We also disagree with the FLRA's contention that our interpretation of the DM & S Statute is precluded by recent decisions from our sister circuits. *See Veterans Admin. Medical Center, Northport v. FLRA,* 732 F.2d 1128 (2d Cir.1984) ("*Northport*"); *Veterans Admin. Medical Center, Minneapolis v. FLRA,* 705 F.2d 953 (8th Cir.1983) ("*Minneapolis*"). Both cases held that the VA need not bargain over medical employees' proposals regarding disciplinary and adverse action procedures because Congress clearly intended the disciplinary pro-

cedures of 38 U.S.C. § 4110 to be exclusive. *See Northport,* 732 F.2d at 1131; *Minneapolis,* 705 F.2d at 956.

To be sure, these cases are distinguishable because, unlike section 4110, section 4108 does not set forth particular procedures that conflict with the union's proposals. While both decisions suggested that the FSLRA's mandatory bargaining requirement might apply to matters other than disciplinary proceedings ("Our decision does not preclude proposals concerning grievance procedures ... to be used in employment disputes not covered by section 4110," *Minneapolis,* 705 F.2d at 958; "the VA has not refused to bargain with DM & S professionals," *Northport,* 732 F.2d at 1132), in neither case was the nature of the Administrator's authority under section 4108 at issue.

C. The Impact of Subsequent Legislation

■ Regardless of what Congress had in mind in 1946 when it enacted the DM & S Statute, the union argues that it would be "wholly fanciful" to read section 4108 as conflicting with a collective bargaining right that was not available to federal employees until 1978. Brief for Colorado Nurses as Intervenors at 19.

The union advances two arguments. First, it contends that the FSLRA's collective bargaining requirement cannot be seen as trenching on the Administrator's authority to determine working conditions because that requirement is substantially different from the mandatory restrictions imposed by civil service laws in 1946. This argument carries little weight in view of our holding that Congress intended to grant the Administrator exclusive authority to determine the working conditions of DM & S employees. It is irrelevant that Congress did not affirmatively intend to foreclose collective bargaining so long as Congress did intend to grant sole authority to the Administrator. Furthermore, the FSLRA's collective bargaining provisions can be just as intrusive as standards imposed by civil service laws. For example, section 7119(c)(5)(B)(iii) of the FSLRA authorizes the Federal Service Impasse Panel

to impose a solution on the negotiating parties if they cannot reach an agreement.

The union also suggests that the chronology of the statutes is important because the FSLRA, which was enacted in 1978, impliedly overrode section 4108. We disagree. Even if this were the case, the union would still have to overcome the explicit language of section 4119, in which Congress reaffirms the preeminence of the DM & S Statute. As we noted in our discussion of section 4119 in *AFGE v. FLRA*, 850 F.2d 782 (D.C.Cir.1988):

> Title 38 is simply an entirely different personnel system from that embodied in title 5; it has both provisions more beneficial to employees and those that are less advantageous. We see no indication that Congress wished only those provisions more beneficial to employees in title 38 to preempt title 5.

At 787.

More fundamentally, the union's interpretation is precluded by the "basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976); *Simpson v. United States*, 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978) ("Precedence [is given] to the terms of the more specific statute where a general statute and a specific statute speak to the same concern, *even if the general provision was enacted later.*") (emphasis added); *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, *regardless of a priority of enactment.*") (cited cases omitted) (emphasis added). As we have found the DM & S Statute and the FSLRA to be in conflict on the question of mandatory bargaining, the former must prevail because of its specific application to the VA's medical personnel.

## III. CONCLUSION

In enacting section 4108, Congress intended to give the Administrator unfettered discretion to issue regulations concerning the working conditions of DM & S employees. Because this section does not leave room for mandatory collective bargaining over union proposals relating to working conditions, the VA need not bargain over any of the six proposals at issue in this case. We need not address the FLRA's separate holding that the "management rights" section of the FSLRA permits the VA to decline to negotiate over two of the same proposals. The VA's petition for review is granted, and the union's cross-petition is denied.

*So ordered.*