# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 27, 2006       Decided January 16, 2007

No. 05-5365

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
AFL-CIO, LOCAL 446,
APPELLANT

v.

R. JAMES NICHOLSON, SECRETARY OF VETERANS AFFAIRS,
AND MICHAEL J. KUSSMAN, M.D., M.S., M.A.C.P.,
ACTING UNDER SECRETARY FOR HEALTH FOR THE VETERANS
HEALTH ADMINISTRATION,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00613)

*Kevin M. Grile* argued the cause for appellant. With him on the briefs were *Charles A. Hobbie* and *Mark D. Roth*.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Michael J. Ryan*, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG, *Chief Judge*, and SENTELLE and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: This case has its roots in a labor dispute between the Department of Veterans Affairs ("VA") Medical Center in Asheville, North Carolina, and the American Federation of Government Employees, AFL-CIO, Local 446, ("the Union"), which represents operating room nurses who work at the Asheville Medical Center. The Union secured an arbitration award in favor of the Asheville nurses, but a subsequent decision by the VA's Under Secretary for Health made it impossible for the Union to enforce that award. The Union filed this lawsuit against the Secretary of Veterans Affairs and the VA's Under Secretary for Health to have that decision declared unlawful, so that the arbitration award could be enforced. The district court dismissed the Union's lawsuit for lack of subject matter jurisdiction. On this appeal, the Union argues that the district court erred in dismissing the suit and should have ruled in its favor on the merits. For the reasons that follow, we hold that the district court did have jurisdiction over the Union's complaint. On the merits, however, we hold that the district court should have ruled for the VA defendants.

## I. Jurisdiction

### A. *Background*

Title VII of the Civil Service Reform Act of 1978 ("CSRA"), which is codified at title 5, chapter 71 of the U.S. Code, authorizes most federal employees to collectively bargain over the "conditions of [their] employment." *See* 5 U.S.C. § 7102(2). The collective bargaining rights of doctors and nurses employed by the VA, however, are more limited. In *Colorado*

*Nurses Ass'n v. FLRA*, 851 F.2d 1486 (D.C. Cir. 1988), we held that the Secretary of the VA had the authority to set the conditions of employment for these employees by regulation and that VA medical professionals did not have a right to mandatory collective bargaining. *Colo. Nurses*, 851 F.2d at 1492. Following that decision, in 1991 Congress passed a new statute providing that:

> Except as otherwise specifically provided in this title, the authority of the Secretary to prescribe regulations under section 7421 of this title is subject to the right of Federal employees to engage in collective bargaining with respect to conditions of employment through representatives chosen by them in accordance with chapter 71 of title 5 (relating to labor-management relations).

Department of Veterans Affairs Health-Care Personnel Act, Pub. L. No. 102-40, title II, § 202, 105 Stat. 187, 200 (1991), *codified at* 38 U.S.C. § 7422(a). Chapter 71 of title 5 governs federal employees' labor relations generally, including grievance procedures under collective bargaining agreements. 5 U.S.C. §§ 7121–7123. In other words, 38 U.S.C. § 7422(a) gives VA medical professionals the right to bargain according to the rules set out in chapter 71 of title 5, subject to limitations "specifically provided" in title 38. Title 38 imposes three substantive limitations on the VA nurses' bargaining rights under title 5:

> Such collective bargaining (and any grievance procedures provided under a collective bargaining agreement) in the case of employees described in section 7421(b) of this title may not cover, or have any applicability to, any matter or question concerning or arising out of (1) professional conduct or competence, (2) peer review, or (3) the establishment, determination, or adjustment of employee

compensation under this title.

38 U.S.C. § 7422(b). The third of these limitations – matters concerning employee compensation – is at issue in this case. In addition, Congress authorized the VA Secretary to determine whether a matter is subject to collective bargaining or instead falls under one of the three listed exceptions. As applicable to this case, the statute provides that "[a]n issue of whether a matter or question concerns or arises out of . . . the establishment, determination, or adjustment of employee compensation under this title shall be decided by the Secretary and is not itself subject to collective bargaining and may not be reviewed by any other agency." *Id.* § 7422(d). The VA Secretary has delegated this § 7422(d) authority to the Under Secretary for Health.

Pursuant to their collective bargaining rights under 38 U.S.C. § 7422(a) and chapter 71 of title 5, operating room nurses at the VA Medical Center in Asheville, North Carolina are represented by the plaintiff Union, AFGE Local 446. The Asheville Medical Center is subject to a nationwide collective bargaining agreement ("CBA") between the American Federation of Government Employees and the VA. In February 1999 AFGE Local 446 filed a grievance. The Union claimed that, under the CBA, operating room nurses at the Medical Center were entitled to "premium pay" for any hours worked at night or on weekends. The Medical Center disagreed. The grievance went to arbitration, and in December 1999 the arbitrator ruled in favor of the Union. The arbitrator concluded that operating room nurses were entitled to premium pay for night and weekend work, and ordered appropriate back pay dating to the filing of the grievance. The details of the grievance, which are not relevant to the question of the district court's jurisdiction over this lawsuit, are discussed at greater length in section II of this opinion.

An arbitrator's award may be appealed to the Federal Labor Relations Authority ("FLRA"), but in this case the Medical Center waited too long before filing its appeal,[1] and the FLRA dismissed the appeal as untimely. The Medical Center refused to recognize the award. It is an unfair labor practice ("ULP") for a federal agency to fail to comply with a valid arbitration award, *see Dep't of Health & Human Servs. v. FLRA*, 976 F.2d 1409, 1413 (D.C. Cir. 1992), so to enforce the award the Union filed a ULP charge with the FLRA. In September 2000 the FLRA served a ULP complaint on the Medical Center.

Meanwhile, by letter of February 14, 2000, the Medical Center had requested a determination from the VA that the arbitrator lacked the authority to rule on the Union's grievance, on the grounds that 38 U.S.C. § 7422(b) excludes matters concerning the determination of employee compensation from the bargaining and grievance process. Several months later, the VA Under Secretary for Health returned the Medical Center's request for a § 7422 determination. The Under Secretary instructed the Center to first attempt to resolve the matter through consultation with the Union, pursuant to the collective bargaining guidelines then in effect between the AFGE and the VA. Negotiations failed, and in October 2000 the Medical Center again requested a ruling from the Under Secretary.

With this request still pending with the Under Secretary, the FLRA General Counsel prepared to seek judgment against the Medical Center in the ULP proceeding. On March 5, 2001, the General Counsel moved for a summary judgment to enforce the arbitration award. Also on March 5th, the VA Under Secretary issued a Decision Paper ("§ 7422 Decision"). The Under Secretary found, "[u]nder the authority in 38 U.S.C. 7422(d)," that the arbitrator's decision and the subsequent ULP proceeding

---

[1] *See* Part II.A, *infra*.

before the FLRA "concern[] the establishment, determination, or adjustment of employee compensation."

With the § 7422 Decision in hand, the Medical Center opposed summary judgment in the FLRA proceeding and sought dismissal of the Union's attempt to enforce the arbitration award. The Medical Center argued that the FLRA lacked jurisdiction over the Union's complaint, and that the Under Secretary's § 7422 Decision conclusively decided the issue because a question decided by the VA under § 7422(d) "is not itself subject to collective bargaining and may not be reviewed by any other agency." 38 U.S.C. § 7422(d). The FLRA agreed and dismissed the complaint. The FLRA held that its jurisdiction could be challenged at any stage in its proceedings, and that because the Under Secretary "has made a § 7422(d) determination, the Authority lacks jurisdiction over this matter." *U.S. Dep't of Veterans Affairs, VA Med. Ctr., Asheville, N.C.*, 57 F.L.R.A. 681, 2002 WL 1019134, at *5 (Jan. 31, 2002) ("*VAMC Asheville*").

The Union did not seek judicial review of the FLRA decision, for reasons that will be discussed below. Instead, in April 2002 it filed this lawsuit against the Secretary of Veterans Affairs and the Under Secretary for Health in their official capacities – collectively, the "VA" – on the theory that the Under Secretary's § 7422 Decision was unlawful. If the § 7422 Decision were declared unlawful by the district court, the Union reasoned, then the arbitration award would be enforceable against the Medical Center, and the operating room nurses at that facility would finally receive their "premium pay" for night and weekend work.

The Union and the VA filed cross motions for summary judgment. The VA also sought dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing that the district court did not

have subject matter jurisdiction over the claims raised in the Union's complaint. In July 2005 the district court granted the VA's motion to dismiss. *AFGE, Local 446 v. Principi*, 404 F. Supp. 2d 14, 28 (D.D.C. 2005) ("*Local 446*"). The district court concluded that, although the Union claimed to be challenging the legality of the Under Secretary's § 7422 Decision, the Union's "Complaint is properly characterized as a claim seeking review of the January 31, 2002, FLRA decision in the ULP proceeding, which dismissed Plaintiff's administrative complaint." *Id.* at 21. Judicial review of such an FLRA order is established by 5 U.S.C. § 7123(a), which provides that an aggrieved person – here, the Union – may seek review of an FLRA order involving an unfair labor practice in the United States Court of Appeals. *See id.* at 20-22. And because the Union's FLRA case involved VA medical professionals whose bargaining rights were established and limited by 38 U.S.C. § 7422, subsection (e) of that statute specifically requires that a petition for judicial review authorized by 5 U.S.C. § 7123 be brought in the U.S. Court of Appeals for the District of Columbia Circuit. *Id.* at 21.

District courts do not have concurrent jurisdiction to review challenges to FLRA orders, *AFGE v. Loy*, 367 F.3d 932, 935 (D.C. Cir. 2004), so the district court held that it lacked jurisdiction over the FLRA's January 31, 2002 order dismissing the ULP complaint. Review of that order, the court concluded, could be had only in the D.C. Circuit. *Local 446*, 404 F. Supp. 2d at 23. Having found that the Union's complaint was "actually an appeal of the FLRA ruling," the district court concluded that the Union had failed to "adequately set forth any claim challenging the merits of the Under Secretary's determination." *Id.* at 27-28. For the reasons explained below, we reverse the district court's jurisdictional determination.

## B. *Analysis*

This court reviews the district court's dismissal for lack of subject matter jurisdiction de novo. *Doe v. Metro. Police Dep't*, 445 F.3d 460, 465 (D.C. Cir. 2006). First, the Union argues that the district court mischaracterized its complaint. According to the Union, this lawsuit is not a veiled attempt to appeal the January 31, 2002 FLRA order. Rather, it is a straightforward claim under the Administrative Procedure Act ("APA") to set aside agency action – the Under Secretary's § 7422 Decision – that the Union contends is arbitrary and capricious or otherwise unlawful. *See* 5 U.S.C. § 706(2). Second, the Union argues that the district court did have jurisdiction over its complaint. The VA acknowledges that the legality of final agency action is presumptively subject to judicial review, *see Transactive Corp. v. United States*, 91 F.3d 232, 236 (D.C. Cir. 1996), but argues that in this case the Union was required to bring its claims against the VA in this court, not the district court. We agree with the Union on this issue, and hold that the district court erred in dismissing the Union's complaint.

## 1. *Judicial Review of the FLRA Order*

As emphasized by the district court, the Union did not seek review of the January 31, 2002 FLRA order in the D.C. Circuit, although it was authorized to do so under 38 U.S.C. § 7422(e) and 5 U.S.C. § 7123(a). The reason is simple: petitioning for review of that order would have been to no avail, because the D.C. Circuit lacked the authority to grant the relief sought by the Union. The Under Secretary's decision that a matter arises out of a collective bargaining exclusion "may not be reviewed by any other agency." 38 U.S.C. § 7422(d). The Federal Labor Relations Authority and the Department of Veterans Affairs, of course, are separate agencies. The FLRA therefore lacked authority to review the § 7422 Decision, and on review of the

FLRA's dismissal this court could not have concluded otherwise.

It is true that "district courts do not have concurrent jurisdiction over matters within the exclusive purview of the FLRA." *AFGE v. Loy*, 367 F.3d 932, 935 (D.C. Cir. 2004). The district court concluded, under *Loy*, that the FLRA had exclusive jurisdiction over the claims raised in this lawsuit. *Local 446*, 404 F. Supp. 2d at 21-22. The rule from *Loy* does not apply in the instant case, however, because the legality of the disputed § 7422 Decision is expressly outside the FLRA's purview. Because the Union is presumptively entitled to judicial review of its claim that the Under Secretary's § 7422 Decision was unlawful, and because the D.C. Circuit could not provide that review on a petition for the review of the FLRA decision dismissing the ULP complaint, *Loy* does not provide a basis for the district court dismissing this case for lack of jurisdiction.

## 2. *Judicial Review of the § 7422 Decision*

Notwithstanding any mistaken reliance on *Loy*, the VA contends that the district court nonetheless reached the right result in dismissing this case for lack of subject matter jurisdiction. The VA argues that the Union was required to bring such a challenge directly to the D.C. Circuit. On this theory, the district court correctly dismissed the Union's lawsuit, not because it was a veiled appeal of the FLRA order, but because the district court lacked jurisdiction over the Union's challenge to the Under Secretary's § 7422 Decision.

To resolve this question we must analyze the scope of 38 U.S.C. § 7422(e), which concerns judicial review of disputes involving VA medical professionals. As discussed above, under title 38 these VA employees are entitled to bargain collectively "in accordance with chapter 71 of title 5," "[e]xcept as otherwise

specifically provided in [title 38]." 38 U.S.C. § 7422(a). One of the exceptions to the rights provided under title 5 is found in § 7422(e):

> A petition for judicial review or petition for enforcement under section 7123 of title 5 in any case involving employees described in section 7421(b) of this title or arising out of the applicability of chapter 71 of title 5 to employees in those positions, shall be taken only in the United States Court of Appeals for the District of Columbia Circuit.

*Id*. § 7422(e). As it concerns petitions for review of FLRA orders, the effect of § 7422(e) is simply to channel all such petitions involving VA medical professionals to the D.C. Circuit, as opposed to any other United States court of appeals. Thus – as noted above – had the Union sought judicial review of the January 31, 2002 FLRA order, § 7422(e) would have required the Union to file that petition for review in this court. Such a petition for judicial review would be brought "under section 7123 of title 5" (which authorizes judicial review of unfair labor practice claims involving arbitration awards, *see* 5 U.S.C. § 7123(a)(1)), and would involve VA employees "described in section 7421(b)" (which include registered nurses, *see* 38 U.S.C. § 7421(b)(5)). 38 U.S.C. § 7422(e). In contrast, a party whose right to judicial review of an FLRA order arises directly under title 5 may choose to seek review "in the circuit in which the person resides or transacts business *or* in the United States Court of Appeals for the District of Columbia." 5 U.S.C. § 7123(a) (emphasis added).

That much should not be controversial. The controversy is over the meaning of the phrase "petition for judicial review" as it is used in § 7422(e): "A petition for judicial review or petition for enforcement under section 7123 of title 5 in any case

involving employees described in section 7421(b) of this title or arising out of the applicability of chapter 71 of title 5 to employees in those positions" must be brought in the D.C. Circuit. The VA argues that § 7422(e) applies not only to petitions authorized under 5 U.S.C. § 7123, but also to all other disputes that "aris[e] out of the applicability of chapter 71 of title 5 to [VA medical] employees." On this argument, the Union's claims in this lawsuit were required to be brought in a petition for review filed in the D.C. Circuit because the Union's claims "aris[e] out of the applicability of chapter 71 of title 5" to the Asheville operating room nurses. In defense of their reading of subsection (e), the VA asks us to read § 7422 as a whole. It makes sense – the argument goes – that subsection (e) would govern all challenges to the VA's authority, established in subsection (d), to settle disputes concerning the collective bargaining exclusions enumerated in subsection (b).

While plausible at first glance, the VA's intuition is inconsistent with the plain meaning of the statute. On the VA's reading of subsection (e), the term "petition for judicial review" refers to two types of petitions: petitions "under section 7123 of title 5 in any case involving employees described in section 7421(b) of this title," and petitions "arising out of the applicability of chapter 71 of title 5 to employees in those positions." In other words, according to the VA, subsection (e) provides that "[a] petition for judicial review or petition for enforcement" must be taken in the D.C. Circuit if that petition is brought "under section 7123 of title 5 in any case involving employees described in section 7421(b) of this title," and a petition must also be taken in the D.C. Circuit if that petition "aris[es] out of the applicability of chapter 71 of title 5 to employees in those positions."

The statute does not support such an unwieldy construction. To the contrary, the term "petition for judicial review" refers

only to one type of petition: petitions authorized under section 7123 of title 5. It is clear that both "petition for judicial review" and "petition for enforcement" are so authorized. Section 7123(a) provides that aggrieved persons may obtain judicial review of specified final FLRA orders. Section 7123(b) provides that the FLRA may petition "for the enforcement of any order of the Authority." And § 7123(c) contains rules applicable to "a petition under subsection (a) of this section for judicial review or under subsection (b) of this section for enforcement." Accordingly, the first fifteen words in § 7422(e) must be read together: "A petition for judicial review or petition for enforcement under section 7123 of title 5" must be taken in the D.C. Circuit if that petition is from "any case involving employees described in section 7421(b) of this title or arising out of the applicability of chapter 71 of title 5 to employees in those positions." Subsection (e) does not apply to *every* "case . . . arising out of the applicability of chapter 71 of title 5," because "any case" does not refer to all cases, but only to those cases involving final FLRA orders that are subject to judicial review under 5 U.S.C. § 7123.

Our construction of this statute is supported by a recent decision in a very similar case. In *AFGE, Local 2152 v. Principi*, 464 F.3d 1049 (9th Cir. 2006), the Ninth Circuit rejected the argument that challenges to the VA's § 7422(d) authority must be brought in the D.C. Circuit. Though subsection (e) is not a model of clear draftsmanship, we agree with the Ninth Circuit that "[t]he plain language of § 7422(e) refers only to petitions for review or petitions for enforcement under § 7123 of title 5." *Id.* at 1054. Read properly, § 7422(e) merely channels 5 U.S.C. § 7123 petitions to the D.C. Circuit in certain cases involving VA employees; it does not establish the D.C. Circuit's jurisdiction to review, in the first instance, all cases involving the application of title 5 to VA medical professionals. Congress did not preclude judicial review of the

VA's § 7422(d) authority, and because § 7422(e) does not establish the D.C. Circuit as the forum for such challenges we hold that the district court erred in dismissing this case for lack of jurisdiction. Under 28 U.S.C. § 1331, the district courts have original jurisdiction over civil actions arising under federal law, and the Union properly filed this lawsuit in the United States District Court for the District of Columbia.

## II. Merits

The district court dismissed the Union's complaint on fully-briefed cross-motions for summary judgment. The facts are not in dispute. Rather than remand the case for further proceedings, in the interest of judicial efficiency – and mindful that the Asheville operating room nurses with a stake in this litigation received their favorable arbitrator's award in December 1999 – we turn to the merits of the Union's claims. *See, e.g.*, *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986). Section 7422(d) grants the VA broad authority to decide whether a question "concerns or arises out of" a determination of employee compensation, and we hold that the Under Secretary's § 7422 Decision was not unlawful.

### A. *Background*

In February 1999 the plaintiff in this case, AFGE Local 446, filed a grievance on behalf of operating room nurses employed by the VA Medical Center in Asheville, North Carolina. The grievance alleged that the collective bargaining agreement in place between the AFGE and the VA required the Medical Center to pay its operating room nurses a premium for all work at night or on weekends. The grievance was not resolved, so the Union pursued arbitration under the collective bargaining agreement.

14

In December 1999 the arbitrator sided with the Union. The arbitrator based this decision on 38 U.S.C. § 7453, which governs VA nurses' premium pay, and on corresponding provisions in the collective bargaining agreement. Section 7453 provides, in relevant part:

(b) A nurse performing service on a tour of duty, any part of which is within the period commencing at 6 postmeridian and ending at 6 antemeridian, shall receive additional pay for each hour of service on such tour at a rate equal to 10 percent of the nurse's hourly rate of basic pay if at least four hours of such tour fall between 6 postmeridian and 6 antemeridian. When less than four hours of such tour fall between 6 postmeridian and 6 antemeridian, the nurse shall be paid the differential for each hour of service performed between those hours.

(c) A nurse performing service on a tour of duty, any part of which is within the period commencing at midnight Friday and ending at midnight Sunday, shall receive additional pay for each hour of service on such tour at a rate equal to 25 percent of such nurse's hourly rate of basic pay.

38 U.S.C. § 7453(b)–(c). The "premium pay" section of the CBA, in turn, repeats most of this statutory language and provides that premium pay shall be provided "in accordance with" § 7453. The Medical Center argued that nurses were entitled to premium pay only for *regularly scheduled* tours of duty that include night or weekend hours. Because the Medical Center's operating room was generally open only on weekdays, operating room nurses did not work any regularly scheduled tours on weekends or after 6:00 p.m., and the Center claimed that the nurses were entitled only to overtime pay when their work was required during those times. In support of this argument the Medical Center pointed to an internal regulation

that defined "tour of duty" as scheduled hours that employees were required to work on a regular and recurring basis.

The arbitrator, however, concluded that service at night or on weekends was service "on *a* tour of duty" as required by the statute, and ruled that the Medical Center had violated 38 U.S.C. § 7453 and the CBA by failing to award the nurses premium pay for all hours worked at night and on weekends. The arbitrator ordered the Medical Center to compensate the nurses accordingly, "hereafter and retroactive to the date of the grievance filing."

An arbitrator's award may be appealed to the FLRA. If the FLRA finds that the award is "contrary to any law, rule, or regulation," it "may take such action and make such recommendations concerning the award as it considers necessary." 5 U.S.C. § 7122(a). But, "[i]f no exception to an arbitrator's award is filed . . . during the 30-day period beginning on the date the award is served on the party, the award shall be final and binding." *Id.* § 7122(b). In this case, the Medical Center waited 31 days before filing its exceptions, and the FLRA rejected the appeal as untimely.

The Medical Center refused to recognize the award, so in June 2000 the Union filed an unfair labor practice charge with the FLRA. This attempt to enforce the arbitrator's award was thwarted by the VA Under Secretary's March 2001 decision on the Medical Center's request for a § 7422 ruling. In that decision, the Under Secretary noted that, under the VA's pay regulations, "tour of duty" is defined in terms of nurses' basic, 40-hour work schedule, and that the nurses receive overtime pay – but not premium pay – for work outside that normal workweek. Because the operating room nurses' regularly scheduled tours of duty did not involve night or weekend work, the Under Secretary concluded:

Under the authority in 38 U.S.C. 7422(d), I find:

that the arbitrator's decision and subsequent ULP concerns [*sic*] the establishment, determination, or adjustment of employee compensation.

Under the authority in 38 U.S.C. 7422(d), I find:

that the payment of night differential and weekend premium pay to OR [operating room] nurses for periods of overtime work concerns or arises out of a matter or question of the establishment, determination, or adjustment of employee compensation under title 38.

In response, the FLRA dismissed the ULP complaint for lack of jurisdiction. *VAMC Asheville*, 2002 WL 1019134, at *5.

## B. *Analysis*

We determine the parties' motions for summary judgment under the standard set by Federal Rule of Civil Procedure 56(c): summary judgment is appropriate if there is no genuine issue as to any material fact and if either the Union or the VA is entitled to a judgment as a matter of law.

The Union makes two principal arguments. The first is based on timing: the Union argues that the VA waited too long before issuing the § 7422 determination. The second concerns the substance of the Under Secretary's determination: the Union argues that the grievance did not concern the determination or adjustment of employee compensation. We reject these arguments and hold in favor of the VA.

### 1. *The Timing of the § 7422 Decision*

The Union argues, first, that the VA lacks statutory authority to issue a § 7422(d) determination after a grievance has been resolved in a final and binding arbitration. Section 7422(b) provides that "grievance procedures provided under a collective bargaining agreement" may not be applied to matters concerning the determination of employee compensation; according to the Union, those grievance procedures ended when the arbitrator's award became "final and binding" by operation of 5 U.S.C. § 7122(b). On this argument, the VA impermissibly undermined the finality of a legitimate arbitration by issuing its § 7422 Decision in March 2001, more than a year after the arbitrator's award became final. In a related argument, the Union asserts that the VA violated the Union's "substantive" due process rights by interfering with the Union's (and its members') property interest in the relief promised by the arbitrator's award.

We cannot agree that the VA loses its authority to decide an issue under § 7422(d) once an arbitrator enters an award on that same issue. As an initial matter, nothing in title 38 imposes such a time limit. The Union argues that Congress is presumed to legislate with existing law in mind, and therefore the interest in arbitral finality reflected in § 7122 of title 5 must limit the VA's authority under title 38. We need not determine whether there is a conflict between title 38 and title 5 in this case, however, because 38 U.S.C. § 7425(b) expressly provides that "no provision of title 5 . . . which is inconsistent with any provision of . . . [chapter 74 of title 38] shall be considered to supersede, override, or otherwise modify" any provision under chapter 74 of title 38. The plain text of this statute requires that, to the extent 38 U.S.C. § 7422(d) creates a conflict with 5 U.S.C. § 7122, the latter provision must give way.

Of greater importance, the collective bargaining exclusions in § 7422(b) are jurisdictional: disputes that concern or arise out of the determination or adjustment of employee compensation are not subject to arbitration. In turn, a decision under § 7422(d) will settle a dispute over an arbitrator's jurisdiction, or, as in this case, a dispute over the FLRA's authority to enforce an award in a ULP proceeding. It will not however address the "merits" of an arbitrator's award, because the effect of such a decision is to establish whether the matter is subject to title 5 collective bargaining procedures in the first place.[2] The § 7422 Decision states that the "FLRA has no jurisdiction to review the ULP," because the "ULP concerns the establishment, determination, or adjustment of employee compensation." In its decision dismissing the Union's attempt to enforce the arbitration award, the FLRA stated that "[p]arties may raise arguments regarding the Authority's jurisdiction at any stage of the Authority's proceedings." *VAMC Asheville*, 2002 WL 1019134, *5. Though that decision is not now before us, there is nothing troubling about the FLRA's conclusion that its jurisdiction was properly challenged in a ULP proceeding. In the analogous private sector context, an arbitrator's jurisdiction may be challenged in an enforcement proceeding brought in a district court, and this court has similarly approved the FLRA's authority to review the arbitrability of a dispute when that challenge was raised in an unfair labor practice proceeding to enforce an arbitrator's award. *See AFGE v. FLRA*, 850 F.2d 782, 785 (D.C. Cir. 1988). As there was nothing improper about the FLRA's examination of its own jurisdiction over the ULP proceeding, we cannot find that the VA exceeded its authority by issuing the § 7422 Decision while that proceeding was pending. Accordingly, we hold that the VA did not exceed its authority under 38 U.S.C. § 7422(d) by issuing its decision after

---

[2]Accordingly, the Union's argument that the VA impermissibly reviewed the merits of the arbitrator's decision fails.

the conclusion of the arbitration.

The Union's constitutional claim is also without merit. This court has recognized that an act of "grave unfairness," such as "a deliberate flouting of the law that trammels significant personal or property rights," may violate the right to "substantive" due process under the Fifth Amendment. *See, e.g.*, *Tri County Indus., Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997) (quoting *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988)). The Union asserts a legitimate claim of entitlement in the arbitration award and in the relief ordered in that award, and claims that the government's interference with that interest "shocks the conscience." *See Washington Teachers' Union v. Bd. of Educ. of the District of Columbia*, 109 F.3d 774, 781 (D.C. Cir. 1997). The threshold for such a constitutional violation is unclear, but this court has held that a mere violation of law does not give rise to a due process claim. *See Tri County Indus.*, 104 F.3d at 459 (state law); *Comm. of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 944 (D.C. Cir. 1988) (international law). We have held that the timing of the VA's § 7422 Decision was not unlawful, and so our discussion of the Union's due process claim comes to an end.

The Union hints at a distinct constitutional challenge, one rooted in the constitutional separation of powers. The Union contends that "[a] final and binding arbitration award, in the context of a collective bargaining agreement, is the equivalent of a U.S. District Court judgment," and argues that the VA may not "use an administrative power [to] evade the labor equivalent of a District Court judgment." Br. of Appellant at 45, 46. It is true that "[j]udgments within the powers vested in courts by the Judiciary Article of the Constitution may not lawfully be revised, overturned or refused faith and credit by another Department of Government." *Chicago & S. Air Lines v.*

*Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948); *see also Hayburn's Case*, 2 U.S. (2 Dall.) 409 (1792). The problem with the Union's argument is that an arbitration award under chapter 71 of title 5 is not constitutionally equivalent to a judgment of an Article III court. Enforcement of such an award is through an FLRA unfair labor practice proceeding, which itself is subject to review by the United States Court of Appeals. There may be a point after which the VA may no longer invoke its § 7422(d) authority to resolve a jurisdictional dispute, but because that is not the case before us, we need not draw that line in holding that a determination made during an FLRA proceeding is not too late. It may be inconsiderate or even unfair, but it is not without legal effect.

### 2. *The Reasonableness of the § 7422 Decision*

The Union next argues that the VA misapplied the collective bargaining exclusion. We will rule for the VA if the § 7422 Decision is not arbitrary or capricious and if the Decision is based on a permissible interpretation of the relevant statutes under *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842-43 (1984). *See Shays v. FEC*, 414 F.3d 76, 96-97 (D.C. Cir. 2005) (analyzing FEC regulations pursuant to both arbitrary and capricious review and *Chevron*). In applying these standards we part ways with the Ninth Circuit, which applied a higher level of scrutiny to a similar § 7422(d) determination in *Local 2152*. In that case, the court first determined that the VA's interpretation of the § 7422 bargaining exclusions "is not entitled to the full level of deference typically afforded administrative decisions pursuant to *Chevron*." *Local 2152*, 464 F.3d at 1057. The court instead treated the Under Secretary's determination as an "opinion letter" entitled to respect only for its "power to persuade." *Id.* (relying on *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)).

We disagree with that approach. Congress specifically authorized the VA Secretary to decide disputes over the scope of the collective bargaining exclusions listed in 38 U.S.C. § 7422(b), and under the APA we must set aside final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Here, the Medical Center's request for a § 7422(d) determination arose from a specific grievance involving operating room nurses, and the VA decided that the dispute was exempt from collective bargaining and that the FLRA was without jurisdiction to review the unfair labor practice complaint. The § 7422 Decision is final agency action for the purpose of judicial review under the APA and therefore will not be disturbed unless it is arbitrary or capricious. And to the extent that the VA's decision turned on its interpretation of the collective bargaining exclusions in § 7422, our review is similar, because the VA's interpretations are entitled to a deferential review under *Chevron*. "[A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). In our view, by treating a § 7422 decision as an opinion letter, the Ninth Circuit in *Local 2152* did not give effect to the text of the statute; a § 7422 decision does not offer the VA's opinion on the scope of the exclusions enumerated in subsection (b). Rather, subsection (d) authorizes the VA to "decide" an "issue of whether a matter or question concerns or arises out of . . . the establishment, determination, or adjustment of employee compensation under this title." 38 U.S.C. § 7422(d). Congress's delegation of such authority "may be shown in a variety of ways," *see Mead* at 227, and in § 7422(d) that delegation is express and unambiguous. Moreover, we cannot read § 7422(d) to establish the VA's

decisional authority with respect to other agencies but not with respect to judicial review, because it is clear from the text of the statute that the bar on review by any other agency is independent of the VA's authority to decide disputes. A dispute over a bargaining exclusion "shall be decided by the Secretary *and* is not itself subject to collective bargaining *and* may not be reviewed by any other agency." 38 U.S.C. § 7422(d) (emphasis added). A decision under § 7422(d) is subject to judicial review, but it is a decision that we review, not an opinion.

The threshold question under *Chevron* is "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. In this case, this question is not whether the VA is authorized to decide disputes over the scope of a collective bargaining exclusion – it is – but whether § 7422 is ambiguous as to the VA's authority to interpret the statute to exclude the Union's grievance from the collective bargaining process. While it seems fairly plain that Congress did intend to grant that authority, to the extent that there is any ambiguity in this regard, under the *Chevron* analysis we must defer to the VA's interpretation of 38 U.S.C. § 7422(d) if that interpretation is "based on a permissible construction of the statute," that is, if the interpretation is reasonable. *Chevron*, 467 U.S. at 843.

Our inquiry under *Chevron* step two overlaps with our inquiry under the arbitrary and capricious standard. "Whether a statute is unreasonably interpreted is close analytically to the issue whether an agency's actions under a statute are unreasonable." *Gen. Instrument Corp. v. FCC*, 213 F.3d 724, 732 (D.C. Cir. 2000); *see also Nat'l Ass'n of Regulatory Utility Comm'rs v. ICC*, 41 F.3d 721, 726 (D.C. Cir. 1994). Congress gave the VA broad authority to decide whether a matter "concerns or arises out of . . . the establishment, determination, or adjustment of employee compensation under [title 38]," and we hold that the VA's decision in this case was reasonable. The

Union argues that it merely sought the Medical Center's compliance with the premium pay standards already established by 38 U.S.C. § 7453 and the CBA. But this begs the question. The question is not whether the Medical Center failed to pay its nurses in accordance with an agreed-upon standard. The applicable standard is in dispute; the parties would agree that § 7453 provides that standard but the Union disagrees with the VA's ultimate conclusion that, as it applies to the operating room nurses who work at the Asheville Medical Center, § 7453 does not mandate premium pay for night and weekend work. The question before us, however, is whether it was reasonable for the VA to determine that the dispute over the nurses' pay for night and weekend work "concerns or arises out of . . . the establishment, determination, or adjustment of employee compensation under [title 38]." 38 U.S.C. § 7422(d). To hold for the VA in this case, we need not determine that the VA's reading of the premium pay statute is the best possible reading, only that it was reasonable for the VA to conclude that the matter concerns or arises out of the determination or adjustment of the nurses' compensation as that compensation is provided for by § 7453.

That standard is met in this case, because the VA's interpretation of § 7453 is reasonable. The VA based its decision on its interpretation of the phrase "[a] nurse performing service on a tour of duty." 38 U.S.C. § 7453(a), (b). The § 7422 Decision explained that "tour of duty" refers to the regularly scheduled workweek for which the nurses receive regular pay. The nurses receive overtime pay for work outside their normal workweek, but at the Asheville Medical Center, operating room nurses' tours did not fall during the premium pay periods identified in § 7453. This interpretation of "tour of duty" as a "regularly scheduled tour of duty" might not be the only permissible interpretation of the statute, but it is a reasonable one. The VA's interpretation of § 7453 as it applies to the

Asheville operating room nurses is reasonable and clearly concerns the determination or adjustment of employee compensation under title 38. Therefore, we hold that the VA's decision – that "the payment of night differential and weekend premium pay to OR [operating room] nurses for periods of overtime work concerns or arises out of a matter or question of the establishment, determination, or adjustment of employee compensation under title 38" – was not unlawful.

## III. Conclusion

For the reasons discussed above, the district court's dismissal for lack of jurisdiction is vacated and the case is remanded to the district court with instructions to enter judgment in favor of the appellees.